NEWTON v. BUCK.

(Circuit Court, N. D. New York. March 16, 1896.)

No. 6,248.

1. ASSIGNMENT OF PATENTS—EXCLUSIVE LICENSE.
A written instrument transferring the exclusive right to make, use, and sell machines under certain patents, is in fact an assignment of the patents, and vests in the assignee a title in the patents themselves, with a right to sue infringers in his own name.

2. SAME—RECEIVERS.
An assignment of a patent can only be made by the actual owner thereof. Rights under the patent do not vest in a receiver, and no title can be transferred under a sale by him pursuant to an order of court.

3. SAME—EQUITABLE RIGHTS.
Defendant, by written instrument, transferred to a firm the exclusive right to make, use, and sell machines in accordance with certain patents. By inadvertence, one patent included in the agreement was omitted from the conveyance. Afterwards a judgment was recovered against a person holding the entire interest of the firm in the patents, and a receiver was appointed in supplementary proceedings under the New York Code.

The receiver, by order of court, sold the interest of the debtor in the omitted patent, and the purchaser transferred the same to defendant. *Held,* in a suit for infringement, that defendant's claim of right under the patent could not be supported on the theory that the right to have the patent inserted in the conveyance was an equitable right, which could pass to the receiver, and, through his sale, to defendant; for this would be to allow defendant to profit by his neglect to do what it was his duty to do under the original agreement.

This is a suit in equity by Addie Newton against James A. Buck and others for infringement of a patent.

Walter E. Ward, for complainant.

George A. Mosher, for defendant.

COXE, District Judge. This is an equity action of infringement, based on letters patent, No. 301,087, granted to the defendant James A. Buck, July 1, 1884, for an improvement in machines for sanding brick molds. The validity of the patent and its infringement are admitted. The only question of fact has reference to the title.

On March 6, 1889, the defendant by written instrument transferred to the firm of A. H. Newton & Bros. the exclusive right to make, use and sell machines in accordance with certain designated patents. The complainant asserts that through inadvertence and mutual mistake the patent in controversy, No. 301,087, was omitted from this instrument. The answer denies this. Upon the issue thus formed, the proof is overwhelmingly with the complainant. The record shows that the parties had been connected in business for six or seven years prior to the 1889 agreement. The history of this business, when considered in connection with the intent and purpose of that agreement, is wholly inconsistent with the defendant's theory. The object, unquestionably, was to vest in Newton Bros. the exclusive right to manufacture under all the defendant's patents during their entire existence, the defendant being paid $12.50 royalty on each machine. It is simply impossible to suppose that men who are actuated by the rules which govern human conduct would enter into an agreement of this kind and omit from it a patent which would at any time enable the defendant to render the agreement utterly worthless. No man of common sense would make such a contract as is alleged by the defendant. These parties are all men of common sense, and, at least, of ordinary intelligence and prudence.

But the matter is not left to presumption. Eight witnesses testify that the parties intended that all the defendant's patents should be transferred, that it was talked over and fully understood at the time, and that the defendant after the agreement stated repeatedly that the entire business and all of his patents were in the hands of the Newtons and he had only to draw his royalties. This testimony is wholly uncontradicted. The defendant was not sworn and does not deny complainant's version of the agreement. He does file a short affidavit, which, by stipulation, is given the effect of proof, in which he swears that after the agreement he never said, "either in words or substance, that he had sold, or disposed of, or that he had intended to sell or dispose of all his right, or an exclusive right, in all his patents, or the patent in suit, either with or without the reservation of a royalty." It is doubtful whether this vague and general lan-

guage can be considered as denying the specific statements, giving time and place, of the witnesses for the complainant, but assume that it can; it certainly denies nothing essential to the complainant's case. It does not deny statements and facts before, but declarations made after, the agreement was signed. And this is all. This affidavit is the be-all and the end-all of the defendant's answer to the complainant's proofs. There can be no doubt that the patent in question was omitted through mistake, and, when it is considered that the agreement was drawn up by an attorney in Washington and added to and executed in Cohoes, the mistake is not an unnatural one. The agreement should be considered as if the number and date of the patent in controversy appeared in the first paragraph.

The only other question argued in the defendant's brief has reference to the alleged title derived from a receiver in the state courts. In the autumn of 1891 a judgment was recovered against A. H. Newton, who then held the entire interest of the firm in the patents; supplementary proceedings were instituted and a receiver was appointed. The receiver was, by order of the state court, permitted to sell the interest of Newton in the patent in question. On the 30th of April, 1895, he sold to one Vermilyea, who, on the 6th of May, 1895, sold to the defendant. This was subsequent to this action which was begun July 1, 1894. On the 1st of March, 1893, Newton assigned his interest in the patent to one Dooley, and on the 24th of February, 1894, Dooley assigned to the complainant. It is argued that the title of A. H. Newton vested in his receiver, and is now owned by the defendant; that complainant has no title because the assignments under which she holds were made after the receiver had been appointed. The agreement of March 6, 1889, though called an "exclusive license," is in fact "an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers * * * in the name of the assignee alone." Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. 334. Section 4898, Rev. St. U. S., provides that "every patent or any interest therein shall be assignable in law, by an instrument in writing" made by the patentee or his assigns or legal representatives.

It would seem that the contention based upon the receiver's supposed title must proceed upon the theory that Newton obtained title under the agreement of 1889. If Newton had no title surely his receiver acquired none. If Newton had title it must be traced back to that agreement, and upheld by sustaining the complainant's contention that No. 301,084 was omitted by mistake. In other words, if the patent was correctly omitted, the receiver gets no title, for Newton had none. If, on the other hand, the patent was assigned to Newton, no one could acquire title except by an assignment from Newton, his representatives or assigns. In short, if the complainant has no title, it is an end of the action. If she has a title which enables her to maintain the action, it is a title which cannot pass to a receiver in supplementary proceedings. The court understands that this proposition is not seriously disputed if it be assumed that the patent was actually transferred by the 1889 agreement. But it is said that the patent did not appear in that agreement, the right to have it inserted was an equitable right, which passed to the receiver and

from the receiver to Buck. The court cannot assent to this view. If there were no other objection, it enables the defendant to take advantage of his own wrong and actually profit by his neglect to do what it was clearly his duty to,do. Equity will not permit a failure of justice upon such narrow grounds. As between the complainant and Buck the assignment should be treated as having been made on the 6th of March, 1889.

It is unnecessary to determine what might have been the result had the state court by decree in equity compelled Buck to assign to Newton and Newton to the receiver, for no such decree was made. The receiver's title rests solely upon the order of the state court in proceedings supplementary to the execution. The rule seems to be well settled that an assignment can only be made by the actual owner of the patent. That rights under the patent cannot be sold by a sheriff on execution, and do not, like other incorporeal rights, vest in a receiver. They may, however, in a proper case, be reached by creditors' bill. Walk. Pat. (3d Ed.) § 156; Rob. Pat. § 766; Ager v. Murray, 105 U. S. 126; Gordon v. Anthony, 16 Blatchf. 234, 248, Fed. Cas. No. 5,605. It is thought, therefore, that the defendant took nothing by his assignment from the receiver. At all events every one who had a vestige of interest in the patent is now before the court; the mutual mistake, in leaving out the patent in question from the 1889 agreement, has been established beyond the peradventure of a doubt and almost without contradiction; the equities are with the complainant, and no serious objection can be urged to the settlement of the rights of all parties at this time upon equitable principles. What the defendant should have done in 1889 may be done now nunc pro tunc. The royalties due to the defendant can be taken care of on the accounting.

The complainant is entitled to a decree in accordance with the prayer of the bill.