## D. M. SECHLER CARRIAGE CO. v. DEERE & MANSUR CO.

(Circuit Court of Appeals, Seventh Circuit. January 21, 1902.)

### No. 816.

PATENTS—ASSIGNMENT—CONSTRUCTION OF INSTRUMENT.

An instrument by which a patentee conveyed to a corporation, "its assigns and legal representatives, the exclusive right to manufacture, use, and sell, and to sell to others to be used and sold, said improvements as patented, * * * throughout the United States and territories thereof, to the full extent of the term for which said patents are granted," is not merely an exclusive license, but constitutes an assignment granting all the patentee's right, and which authorizes the grantee to maintain a suit for infringement in its own name alone; and its character is not changed by the fact that the consideration to the patentee was to be a certain sum on each machine made by the grantee embodying the patented invention, designated in the contract as a "license fee," nor by reason of a clause in the nature of a condition subsequent authorizing the termination of the contract by either party in certain contingencies, nor because it provided that in case of infringement suits against the infringers should at once be brought "at the request of the company," maintained under the joint direction and at the joint expense of the parties, and that the damages recovered should be equally divided. While the language of some of such provisions is inapt and obscure, construing the instrument as a whole, as must be done, it cannot control the plain words of the grant.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This is a bill brought by the appellant, D. M. Sechler Carriage Company, against the Deere & Mansur Company for infringement of letters patent numbered 593,295, dated November 9, 1897, to Clarence H. Dooley, for "combined check row and drill corn planter." The bill was in the usual form, and set out at large the instrument by which it is claimed Dooley assigned the patent to the appellant. This instrument is as follows:

"This agreement, made this 18th day of February, 1898, between Clarence H. Dooley, of Moline, in the county of Rock Island and state of Illinois, party of the first part, and the D. M. Sechler Carriage Company, a corporate body under the laws of said state, located and doing business at Moline, county and state aforesaid, party of the second part, witnesseth: That whereas, said Clarence H. Dooley has invented certain new and useful improvements in combined check row and drill corn planters, for which letters patent of the United States No. 593,295 were issued to him November 9th, 1897; and whereas, he has also made further improvements in the type of planter shown and described in said patent, and contemplates making still others; and whereas, said D. M. Sechler Carriage Company is desirous of acquiring the exclusive right to make, use, and sell, and sell to others to be used and sold, planters embodying the improvements of said patent, and the improvements as yet unpatented: Now, therefore, these parties have agreed as follows:

"(1) The party of the first part hereby gives to the party of the second part, its assigns and legal representatives, the exclusive right to manufacture, use, and sell, and to sell to others to be used and sold, said improvements as patented, which are made but not patented, and other improvements which may be made and patented, by said party of the first part, throughout the United States and territories thereof, to the full extent of the term for which said patents are or may be granted, on the conditions hereinafter named, at its factory in Moline, Illinois, or at such other place or places as it may elect.

"(2) The party of the second part agrees to make full and true returns to the party of the first part, upon the first day of January in each and

every year, of all such improvements in planters made and shipped by it in the term or year last past and previous to the first day of November of the preceding year; and, if said party of the first part shall not be satisfied in any respect with such return, then he shall have the right, either by himself or his attorney, to examine any and all of the books of account of said party of the second part containing any items, charges, memoranda, or other information relating to the manufacture or sale of said patented or unpatented planters, and, upon request made, said party of the second part shall produce all such books for said examination.

"(3) The party of the second part agrees to pay the party of the first part fifty cents (50c.) as a license fee upon each and every one of said planters made and shipped by it, and containing all or either of the improvements of said patent hereinbefore referred to, or containing any or all of the further improvements hereinbefore referred to. Also the sum of fifteen cents (15c.) on each and every single corn or corn and cotton planter made and disposed of under said patents. The whole of said license fee for each term of one year, as hereinbefore specified, to be due and payable in one payment on the first day of January of each year, and, if not paid at that time, to be paid with legal rate of interest added thereto.

"(4) The party of the second part hereby agrees to use its best skill, efforts, and endeavors to make a good, practical, working machine of the planter, and further agrees to introduce said machine to the trade, and to supply all reasonable demands of the trade for the same.

"(5) In the event of the said party of the second part not using its best skill, efforts, and endeavors in making a good practical planter, or in not making and introducing the planters provided for herein to the trade as provided for in clause 4 of this agreement, then the party of the first part may terminate this license by giving the party of the second part thirty days' notice thereof in writing; but the party of the second part shall not thereby be discharged from any liability to the party of the first part for any license fee due at the time of said service.

"(6) Should the party of the second part conclude that the planter made by it and containing said improvement is not a salable or practical machine, it (the second party) may terminate this license by serving a written notice upon the party of the first part; but the party of the second part shall not thereby be discharged from any liability to the party of the first part for any license fees due at the time of service of said notice.

"(7) It is further agreed that, should suit be brought against the party of the second part for alleged infringement of any other patent, payment of royalty as provided for in this agreement shall cease until the final determination of the suit, the expense of which suit shall be borne equally by the parties hereto; and, should such suit result in defeating such charge of infringement, then the royalties accumulating during the pendency of said suit shall be paid to the party of the first part, the same as if no such litigation had taken place. It is hereby agreed between the parties hereto that this clause refers only to the seeding devices proper, and not to other features that may be included in or claimed by said patent.

"(8) Should that part of the patent issued, or of those to be issued, which part or feature relates to the seeding devices proper, be infringed by any person, company, or corporation, suit shall at once be brought at the request of said second party, and shall be vigorously prosecuted to a termination under the joint direction of the parties hereto, and at the joint expense of said parties; and, should damages or royalties be recovered for said infringements, said damage or royalties shall be equally divided between the parties hereto."

The appellee (the defendant below) demurred to the bill upon the grounds: (1) That it appears upon the face of the bill that Dooley is the sole owner of the letters patent, and that the D. M. Sechler Carriage Company, the complainant, is the owner of the exclusive right to manufacture, use, and sell, and to sell to others to use and sell, the patented improvements; (2) that the complainant has no authority to bring suits for infringements in his own name as such exclusive licensee; (3) that Dooley is not a party to the suit, either as complainant or defendant, nor does it appear that the

suit was brought with his knowledge and consent. On the 26th of June, 1901, a decree was entered sustaining the demurrer and dismissing the bill for want of proper parties.

C. E. Pickard and L. L. Bond, for appellant.
John R. Bennett, for appellee.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge, after stating the facts, delivered the opinion of the court.

The only question presented is whether Dooley is a necessary party to the suit. This question in turn depends upon the further question whether the contract constituted an assignment by Dooley of his title to the patent, or was merely an exclusive license. An assignment or grant conveys (1) the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States. "A transfer of either of these three kinds of interest is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone. Any assignment or transfer short cf one of these is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for infringement." Waterman v. McKenzie, 138 U. S. 252, 255, 11 Sup. Ct. 334, 34 L. Ed. 923. See, also, Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504; Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co., 144 U. S. 248, 249, 12 Sup. Ct. 641, 36 L. Ed. 419. In the construction of this instrument, seeking to ascertain the intention of the parties to it, we must be governed by the familiar canons of interpretation. We must gather that intention from within the four corners of the instrument, giving to the language employed its usual signification, and, if possible, reconcile discrepancies and avoid repugnancy, having regard also to the ancient rule that general words in one clause may be restricted by the particular words in a subsequent clause. The preamble of the contract recites that Dooley has invented certain improvements, and contemplates making still others in the particular mechanism stated, and that the company is desirous of acquiring "the exclusive right to make, use, and sell to others to be used and sold" planters embodying the patented improvements and those as yet unpatented; and thereupon Dooley conveys to the company, "its assigns and legal representatives, the exclusive right to manufacture, use, and sell, and to sell to others to be used and sold, said improvements as patented, which are made, but not patented, and other improvements which may be made and patented, by said party of the first part, throughout the United States and territories thereof, to the full extent of the term for which said patents are or may be granted, on the conditions hereinafter named, at its factory in Moline, Illinois, or at such other place or places as it may elect." There is here no obscurity, ambiguity, or defect

of expression. Standing alone, the clause has no need of interpretation. It is a grant conveying the same right and all the right which Dooley acquired by virtue of this patent from the United States. The grant was "on the conditions hereinafter named." It is urgea that the conditions specified control the language of the general grant, and convert the instrument into a mere license. The consideration to Dooley for the conveyance was the amount to be received by him upon the planters made and shipped by the company, and in the contract denominated a "license fee." Full and true returns are to be made to Dooley annually of the sales by the company, and with liberty to Dooley to examine the company's books of account. The company agrees to use its best skill and efforts to make a good, practical working machine, and to introduce it to the trade, and to supply all reasonable demands, and upon failure so to do Dooley "may terminate this license upon notice." So, also, the company, should it conclude that the planter containing Dooley's improvements is not a salable or practical machine, "may terminate this license upon notice." It is urged that the use of the expression "may terminate this license" qualifies the language of the grant, and converts it into a mere license. We cannot concur in this view. It is a circumstance to be considered in the construction of the instrument as a whole, and in ascertaining whether there be provisions subsequent to the granting clause which are so repugnant to it that both cannot stand together. But the calling of an instrument which conveys the whole title of the grantor a license cannot qualify or limit the grant. Johnson R. Signal Co. v. Union Switch & Signal Co. (C. C.) 59 Fed. 20; Newton v. Buck (C. C.) 72 Fed. 777. The provisions in paragraphs 5 and 6, authorizing the termination of the agreement, are conditions subsequent, and do not limit or qualify the character of the estate granted. By the seventh paragraph it is provided that, in case suit should be brought against the company for the alleged infringement of any other patent, payment to Dooley should cease until the determination of that suit, the expenses of which should be borne equally by the parties, and in case of a successful issue to the suit the sums due Dooley which had accumulated during the pendency of the suit should be paid to him as though no litigation had taken place. This clause only refers to the seeding device proper, and not to the other features of the patent. We see nothing in this paragraph which in any way conflicts with or should qualify the language of the grant. As compensation to Dooley depended upon the amount of manufacture and sale, and as the manufacture of planters embodying new and untried devices entailed upon the company a great outlay of money, it was but equitable that expense of a suit attacking the validity of the patent should be borne by both parties. The most obscure and the most difficult of interpretation of the clauses of the agreement is paragraph 8, which provides that, if that part of the patent issued, or of those to be issued, which relates to the seeding devices proper, be infringed, suit should at once be brought at the request of the company, and should be vigorously prosecuted to a termination under the joint direction of both parties and at their joint expense, and

that damages or royalties recovered for such infringement should be equally divided between the parties. It is said that, if title to this patent was wholly in the company, it needed no request on its part to bring suit, nor was the assent of Dooley essential; and that, as stated, is true. But it must not be overlooked that in any such prosecution the aid of the inventor was desirable, if not invaluable; that the company undertook at large expense to introduce this planter; that Dooley depended for the extent of his compensation upon the extent of the sales made by the company; that infringe-- ments might greatly affect the amount of sales, and so injure Dooley, who, for his compensation, was to receive a percentage upon the planters sold. It was therefore manifestly for his interest, as for the interest of the company, that he should assist, upon request, in the prosecution of such suits; and it was proper, in that view, that the damages recovered should be equally divided. The language employed does not forbid a suit by the company without the co-operation of Dooley, but gives to him the privilege, aiding the pros-ecution, to receive one-half the damages, paying one-half the ex-penses. While the language of this paragraph is perhaps inapt and somewhat obscure, it is not so obviously repugnant to the clear and well-defined expressions of the granting clause as to warrant the court in a forced and unnatural construction of the plain language which constitutes the grant. We are of opinion that Dooley is not a necessary party to the suit.

The decree is reversed, and the cause is remanded, with direction to the court below to overrule the demurrer.