ARNOLD MONOPHASE ELECTRIC CO. v. WAGNER ELECTRIC MFG. CO. et al.

(Circuit Court, S. D. New York. September 19, 1906.)

PATENTS—SUIT FOR INFRINGEMENT—TITLE OF COMPLAINANT.

A contract between a patentee and complainant's assignors construed in the light of the correspondence between the parties, and *held* not to operate as an assignment of the legal title to patents, because of conditions therein which were precedent to the becoming absolute of the assignment, and which were neither performed by the assignee nor waived, so that complainant was without title to support a suit for infringement against subsequent licensees of the patentee.

In Equity.

Charles E. Hughes and Harold Binney, for complainant.

Lawrence E. Sexton (Albert C. Fowler, of counsel), for defendants Wagner Co. and H. A. Wagner.

HAZEL, District Judge. This is a suit in equity to recover for the infringement of United States letters patent. Nos. 543,836, dated August 6, 1895, and 562,365, dated June 23, 1896, issued to Engelbert Arnold, inventor, of Zurich, Switzerland, for single phase alternating current motors. The complainant claims title to the inventions by assignment from the patentee dated January 2, 1896. The defendants challenging complainant's title assert the rights of the defendant Wagner Electric Manufacturing Company, as exclusive licensee, under license dated December 2, 1898, from the same source. The defendant Herbert A. Wagner, formerly an officer and director in the defendant company, is charged with instigating the infringement, in that, with notice of complainant's prior rights, he assisted the Wagner Company to acquire the inventions in suit.

Two questions are involved here: First, was the unrecorded assignment of the patents from Arnold to J. Paul Gaylord and Lewis R. Schultz (complainant's assignors) valid in law against all persons except purchasers in good faith for value without notice of complainant's rights; and, second, assuming the legal title of the patents in complainant, was such title void under section 4898, Rev. St. U. S. [U. S. Comp. St. 1901, p. 3387], as against the Wagner Company, an exclusive licensee?

According to the statute an assignment of a patent is void as against any subsequent purchaser or mortgagee without notice, unless it is recorded within three months from its date. Considerable discussion was had at the hearing as to whether the word "purchaser," used in the recording act, includes an assignee or licensee, having such rights as were granted by the patentee to the defendant company. But, in the view taken by the court of the assignments in question, it is not deemed necessary to pass upon this point. A decision upon the issue of complainant's legal title is thought to depend upon the construction of the agreements aided by the intendment of the parties as shown by the proofs. The correspondence passing between Prof. Arnold and complainant's predecessors must be read and considered. In fact, each step of the entire transaction must be carefully weighed to the end that the controversy terminate in accordance with equitable principles. Care must be had that the consequences which follow the application of the extraordinary rights of a court of equity are not inflicted on the wrong party in interest. The proofs warrant the view, I think, that, because of the default by complainant's predecessors in complying with the conditions of the contract, the patentee had such an interest in the subject-matter of the controversy as to merit serious consideration of his asserted right to convey the patents to other persons.

There is considerable indefiniteness in the Arnold-Gaylord-Schultz transaction. For instance, the provisions of the assignment in relation to the payment of the "full amount already agreed upon" is not entirely free from ambiguity. What is the fair construction of the agreement? Did Prof. Arnold by the assignment completely and unconditionally divest himself of his American rights in the patents therein described? The problem presented is not free from difficulty. To comprehensively understand the relations of the parties to the agreement, and what they actually intended, it is necessary to state in substance portions of the option agreement and the assignment. In the first agreement, dated January 2, 1894, between Arnold and the Pennsylvania Electric Engineering Company, which concededly was an option to purchase the Arnold patents, it was agreed that in consideration of the assignment $4,000 in cash would be paid, and that a company would be formed and $20,00 of its capital stock issued to the patentee. The option remained in force for one year, and the sale of the patents not being consummated thereunder, the same was extended in writing until January 2, 1896. Thereupon another agreement (the assignment in question) was entered into between patentee and Gaylord and Schultz, who were substituted in place of the Pennsylvania Electric Engineering Company, and subsequently assigned to the complainant. In the latter assignment, which was not recorded until after the grant of the license by Arnold to the defendant company, the terms and conditions of the option agreement were "renewed, * * * except only as modified or altered by the provisions of this agreement and the attached addition and amendment hereto." The language quoted is contained in the first and sixth pargraphs of the assignment, thus clearly indicating, I think, that it was not intended to substitute the later agreement for the earlier, but merely to modify the same in certain

particulars. By the second clause, in consideration of the payment of $800, is transferred or assigned the Arnold United States patents and improvements, together with all applications for patents relating to alternating current motors, but at the end of the paragraph are these words:

"Provided, however, that said assignment shall not take effect as an absolute assignment of said patents and application until the full amount already agreed upon shall have been paid to the party of the first part by the parties of the second part."

This language would seem to modify and restrict the otherwise unconditional grant of the patents. By the third provision it is agreed that the patentee will deliver to the parties of the second part a complete 60-cycle motor, and will supply necessary working drawings to enable the assignees to manufacture any of the motors covered by the patents; that upon receiving the 60-cycle motor, and within six months thereafter, tests were to be made and completed by the parties of the second part, to ascertain whether such motor was suitable for commercial uses, and, if the same was found impracticable, then the assignees were to advise the patentee, pointing out the defects. It was plainly agreed that before the expiration of the six-months period Gaylord and Schultz would either accept said motor and pay Arnold the sum of $1,200, or notify him of the inefficiency of the motor from a commercial standpoint, giving a complete explanation thereof. It, was further provided that, if the motor should prove practicable or efficient for commercial purposes, then the parties of the second part were to immediately organize a company with a capital stock of not less than $200,000 or more than $500,000, and deliver to the patentee one-tenth of the same. The title to the motor was to pass by assignment from Arnold to the parties of the second part, including the right of application for obtaining patents thereon in the United States, upon receiving the sum of money mentioned in paragraph 3. The fifth provision reads as follows:

"The parties of the second part agree that if, after acceptance of said 60-cycle motor, they do not proceed with the formation of said corporation or company and successfully develop said inventions to commercial advantage within 12 months from the acceptance of said 60-cycle motor, then, at the option of the party of the first part, this agreement shall cease and determine, and said patents, and all rights and interest therein, shall revert and be reassigned to the party of the first part, his heirs, executors, administrators, and assigns."

Complainant claims that, the phraseology of provision 2 being in form an absolute assignment, the condition in relation to the payment of $1,200 on delivery of the 60-cycle motor was a condition subsequent, the payment of which was enforceable in an action at law. The suggestion is unimportant, and need not be considered; it appearing by the evidence that the amount was actually paid by the parties bound. Such payment under the contract was for the motor, and not as a substitute for the consideration of the assignment. It is insisted, however, by complainant, as I understand the argument and brief submitted, that the provisions of clause 5, whereby it was agreed that, in case a com-

pany or corporation was not formed within the limited period, the agreement at Prof. Arnold's election should cease and determine, and the patent rights revert and be reassigned to him, was voluntarily waived; further, that the acceptance of the motor was a condition precedent to the payment of said $1,200 by the parties of the second part; that such payment was made without "acceptance" of the motor, and accordingly the period limited by the assignment for the organization of a company or corporation was suspended and remained in indefinite abeyance; that the original amount agreed to be paid under the option agreement, namely, the sum of $4,000, was also either waived, or, in the alternative, the provision by which Gaylord and Schultz were required to pay the sum of $1,200 upon their acceptance of the motor was substituted therefor.

From a careful examination of the record I conclude that there is neither justice nor logic in these propositions or claims. Messrs. Gaylord and Schultz were bound to accept the motor within six months from its delivery to them, or to reject it, unless such period was extended or waived by the patentee. The motor was delivered at Philadelphia on April 16, 1896, and the six-months period expired on October 16, 1896. True, the time within which the agreement should have been performed was not definitely stated, and, indeed, there is some inconsistency expressed in the assignment in relation thereto, yet the reasonable import of the language employed, considering the agreement in its entirety, would seem to have given complainant's predecessors 12 months after acceptance of the motor to form a company and to complete the arrangement by transferring the stipulated portion of the capital stock. Furthermore, the assignment was accompanied by a condition precedent—that the assignees "proceed with the formation of said corporation or company and successfully develop said inventions to commercial advantage within 12 months from the acceptance of said 60-cycle motor."

The contention, as already intimated, that the motor was never accepted, is specious. There can be no unfathomable meaning of the term "accepted" in connection with the motor in question, which, as the evidence shows, was commercially satisfactory and in fact was paid for and its possession retained by complainant's predecessors. In a letter to Prof. Arnold, under date of November 16, 1896, Mr. Gaylord, after stating in effect that satisfactory tests of the motor had been made, and that it was not thought expedient by his associates to then undertake the organization of a corporation, proposed depositing the $1,200 mentioned in the assignment with a firm of bankers; such payment and deposit, however, not to be construed as an acceptance of the motor, upon which subject he writes that he will express himself later before the extended time expires. Prof. Arnold replied as follows:

"As the time at which you must decide definitely whether you will pay the sum of $1,200 and fulfill the contract expires on the 1st of January, 1897, I declare myself satisfied with your proposition under the following conditions: (1) You deposit with the banking house of E. Koelle, in Karlsruhe, in Baden, the sum of $1,200, with the condition that this sum must be paid to me on July 1, 1897, at the latest. If, however, before the 1st of July, 1897, you make a written declaration that I get back the free right of disposal

of all the patents mentioned in our agreements of January 2, 1894, and February 27, 1896, and that you waive all further claims, then the deposit of $1,200 shall be paid back to you. (2) These $1,200 take the place of the $1,200 mentioned in section 3 of the agreement of February 27, 1896. In all other respects the entire agreement and also section 3 remains in force."

To this letter complainant's predecessors made no reply. On January 28, 1897, Prof. Arnold wrote:

"As I have been without a reply to my last letter until now, I request you to let me know at once whether you will decide upon the building of the motor and the incorporation of a company or not. In the latter case I would decide to turn my patents to account in another direction."

On February 12, 1897, Mr. Schultz replied as follows:

"Acknowledging your letter of January, would say we are now engaged in making arrangements to build a number of motors, and will write you very soon in detail an answer to your letter, which I think will be satisfactory to you."

In the letter of May 7, 1897, to Prof. Arnold by J. Paul Gaylord, the writer states that he has contracted with the Electro-Dynamic Company for the manufacture of 20 experimental motors. No reference, however, is made to the incorporation of a company or the payment of the $1,200. On April 15, 1897, a communication was addressed to Prof. Arnold, stating in effect that 5,000 marks had been remitted to Messrs. G. Muller & Sons, to be paid to the patentee on July 1, 1897—

"If, after test by sale of 20 of your motors on the market here (as recently proposed by us and consented to by you), their commercial value shall warrant the formation of the company, which we are most anxious to organize for their manufacture and sale. We send the M5,000, as we previously said, as an evidence of our good intentions. As stated in our letter, the above payment is not to be considered as a present acceptance of the motor, upon which we will express ourselves on or before the extended time expires, after above test."

To this communication Prof. Arnold replied on July 30, 1897, that he was "willing to extend the option on the patents stated in the agreements of January 2, 1894, and January 2, 1896, under the conditions named in said agreements, to January 31, 1898." Thus it appears that the performance of an important covenant contained in the assignment was extended by the patentee until January 31, 1898. The letters of Prof. Arnold seem to strictly adhere to the performance of the covenant which bound the assignees to develop the motor, organize a company, and issue to him the capital stock agreed upon. If the letter of November 16, 1896, to Arnold, and his telegraphic reply expressing satisfaction with the proposed modified conditions, alone were to be considered to ascertain the intent of the parties, perhaps complainant's contention that Arnold had waived the covenant relating to the acceptance of the motor and to the formation of the company, might be persuasive. It will be observed, however, that the letters of Prof. Arnold lay stress upon a strict compliance with such covenants. There is some indefiniteness in the correspondence, but the intention gathered from the instruments and subsequent communications from which I have quoted, certainly preclude the claim that

the pertinent conditions of the agreement, to which reference is herein made, have been waived or abandoned.

The point is urged that the title conveyed was absolute, notwithstanding it may have been subject to reassignment for nonperformance of certain conditions. The authorities cited (D. M. Sechler Carriage Co. v. Deere & Mansur Co., 113 Fed. 285, 51 C. C. A. 242, and Boesch v. Graff, 133 U. S. 697, 10 Sup. Ct. 378, 33 L. Ed. 787) to uphold this contention are not in point; they being the result of equities arising from a different state of facts.

Nor was the payment of the sum of $4,000 waived by the patentee, as contended by complainant. Such sum was part of the consideration for the assignment. It is true that in the correspondence passing between the parties this sum is nowhere mentioned, and Prof. Arnold testified that he did not know whether the sum of $1,200 was substituted therefor or whether it was in payment of the motor. In the letter dated November 30, 1896, Prof. Arnold states in substance that the amount which the assignees propose to pay in their letter of November 16, 1896—i. e., $1,200—is to take the place of the amount mentioned in paragraph 3 of the agreement. However, the significance of the proviso contained in clause 2 of the assignment, read in connection with the first and sixth provisions, cannot be ignored, and leaves little room for doubt that in this respect the terms of the option were left unaltered.

The proofs show that the conditions imposed by the agreement, and to which reference has been made, were not performed by complainant's predecessors, and the complainant cannot equitably enforce the rights granted by that agreement. As no subsisting title to the Arnold patents in controversy was acquired by complainant's predecessors, the title to the same remained in Arnold, and after their default he possessed the right to convey the patents to other parties.

The complaint must be dismissed, with costs.