## WATSON v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6911.

Circuit Court of Appeals, Ninth Circuit.
Dec. 5, 1932.

F. C. Drumm, of Santa Ana, Cal., and Daniel Dougherty, of Los Angeles, Cal., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Wm. Cutler Thompson, Sp. Asst. to the Atty. Gen. (C. M. Charest, Gen. Counsel, and Arthur Carnduff, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and CAVANAH, District Judge.

CAVANAH, District Judge.

The Board of Tax Appeals decided that there was a profit of $79,259.39 realized by the petitioner during the year 1924 from the alleged sale of a bus line and that there was a deficiency in the federal income tax of petitioner in the sum of $6,389.02, and a review of that decision is presented to this court.

The issue presented is whether the board erred in construing a certain written instrument executed by the petitioner and the Pickwick Stages, Northern Division, a California corporation, as a sale of the property specified in the instrument consummated in 1924, rather than a lease with an option to purchase. Under the laws of California such transactions as here involved are required to be submitted to the Railroad Commission for its authorization.

Prior to February, 1923, petitioner had been engaged in operating the bus line between Los Angeles and Santa Ana, Cal. In November, 1922, he agreed to sell his busses and franchise to the Pickwick Stages for approximately $100,000, but that sale was canceled upon being informed of the attitude of the Railroad Commission and that they would disapprove it, and the agreement involved here was entered into on February 21, 1923. The provisions of the agreement in question, so far as they are material to determine the question of whether it and the conduct of the parties constituted a sale or lease, are: That the total sum to be paid was $109,900 for the property, payable $10,000 upon execution of the agreement, $20,000 after approval by the Railroad Commission, and $1,700 on the 15th day of each month thereafter until the full purchase price of $109,900 had been paid. Upon payment

of each of the $1,700 installments, the "lessor" shall transfer one of the automobile busses to the lessee, vesting in the lessee good and valid title thereto. An exclusive option is granted to "lessee," after fulfilling the conditions of the instrument, to purchase the operative rights in all of the property for the sum of $1. The equipment described consisted of twenty Reo automobile busses, furniture and fixtures at specified towns and cities, depot facilities, as well as the operative rights acquired by petitioner to certain depot facilities and subleases relating to depot concessions. The transactions made under this instrument were approved by the Railroad Commission. After the instrument was executed, the petitioner received the initial payment of $10,000; $20,000 after approval by the commission, and payment of $1,700 each month thereafter until the contract was completed. When each of the monthly payments were made, the petitioner delivered title to one of the twenty busses which passed under the agreement. All of the property and subleases were conveyed and assigned to the Pickwick Stages.

It is our opinion that the Board of Tax Appeals and this court are free to construe the instrument in question and form their own independent judgment as to its legal effect, and are not bound by the construction, if any, made by the commission. The commission is empowered to make determinations of matters which fall within its jurisdiction, and it is not vested with general judicial powers.

We have approached the construction of this agreement under the rule recognized by the Supreme Court in Heryford v. Davis, 102 U. S. 235, 244, 26 L. Ed. 160, where the court said: " * * * Is not to be found in any name which the parties may have given to the instrument, and not alone in any particular provisions it contains, disconnected from all others, but in the ruling intention of the parties, gathered from all the language they have used. It is the legal effect of the whole which is to be sought for. The form of the instrument is of little account."

If we look to the legal effect of the whole transaction and not to the form, it is obvious that the instrument cannot be accepted as a lease, for the amounts of all rentals are not wholly at variance with the cash consideration fixed three months earlier in the original agreement. It is unthinkable that the payment of $47,000, which is about 43 per cent. of the entire consideration, upon property valued at $109,900 is an annual rental, for that is the approximate amount received by the "lessor" during the year 1924. The so-called "rentals" were not intended to represent rent but were payments on account of the purchase price, called "rentals" to conform to the requirements of the Railroad Commission. It is insisted that in determining the legal status of the instrument the existence of an obligation to pay an additional sum of $1 is a factor. Such payment is nothing more than a formal matter in the transaction involving $109,900. In Harron, Rickard & McCone v. Wilson, Lyon & Co., 4 Cal. App. 488, 88 P. 512, 513, the court said: " * * * When it appears from the terms of the instrument that the intention of the parties was to make a sale of the property, courts will give such construction to the instrument irrespective of the name by which the parties have designated it."

Van Allen v. Francis, 123 Cal. 474, 56 P. 339; Rodgers v. Bachman, 109 Cal. 552, 42 P. 448.

The option clause in the instrument was meaningless from a practical point of view when we come to consider the instrument as a whole, and the conduct of the parties acting thereunder. It is nothing more than a provision to satisfy the Railroad Commission. Therefore, considering the instrument as a whole and what the parties have done, the legal effect constitutes a conditional sale. Silverstin v. Kohler & Chase, 181 Cal. 51, 183 P. 451, 9 A. L. R. 1177.

Having reached the conclusion that a sale was affected by the parties, the decision of the Board of Tax Appeals should be affirmed.

Affirmed.