**Orla E. WATSON and Edith Watson,**
**Appellants,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 5042.**

United States Court of Appeals
Tenth Circuit.

May 12, 1955.

Lancie L. Watts, Kansas City, Mo.,
(Charles C. Shafer, Jr., and William J.
Bell, Kansas City, Mo., on the brief), for
appellants.

Joseph F. Goetten, Washington, D. C.
(H. Brian Holland, Asst. Atty. Gen., El-
lis N. Slack, A. F. Prescott, Walter Aker-
man, Jr., Sp. Assts. to Atty. Gen., and
William C. Farmer, U. S. Atty., Wichita,
Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and
BRATTON and MURRAH, Circuit
Judges.

BRATTON, Circuit Judge.

The crucial question in this case is
whether for income tax purposes a con-
tract constituted an assignment of pat-
ent rights and therefore the income
which the patentee derived therefrom
was long-term capital gain, or whether
the contract constituted a license and

hence the income derived from it was ordinary income.

Orla E. Watson conceived the idea of a cart that could be telescoped horizontally, one into another. The cart was designed particularly for use in grocery stores. Watson made a pencil drawing of the cart, finished two experimental models, tested them successfully, and demonstrated them to others. Watson and Fred E. Taylor entered into a partnership agreement by the terms of which it was agreed that, in consideration of advancements made and to be made by Taylor for use in financing the manufacture and distribution of the carts, Watson would for a term of ten years give Taylor an undivided forty-nine per cent interest in and to the telescope feature. Notwithstanding the language contained in the agreement, it was the intention of the parties that Taylor should receive one-half of the profits derived from the invention but no interest in the patent rights. An application for a patent on the cart was filed and later the patent issued. While the application was pending, Watson—with the consent and assistance of Taylor—entered into an agreement with George Oliver O'Donnell, as trustee for Telescope Carts, Inc., to be thereafter incorporated. The agreement provided among other things that Watson thereby granted to the corporation the exclusive right, license, and privilege to manufacture, distribute, sell, develop, and use the telescope carts for and during the period of the application for letters patent, during the term for which letters patent were issued, and during any extension of such patent or patents. The corporation was organized and O'Donnell assigned to it all of his right, title, and interest in and to the agreement between himself and Watson. During 1950, Watson received from the corporation payment or payments under the contract in the aggregate amount of $78,442.75, out of which he paid Taylor $39,221.38. In their income tax return for the year 1950, Watson and his wife reported as ordinary income $39,221.37 which had been received from the corpo-

ration and paid the tax thereon. Within the statutory time, they filed a claim for refund in the amount of $7,450.04 upon the ground that the income received under the contract was part of the purchase price of the invention and therefore was subject to tax as long-term capital gain. The claim was not acted upon within six months after the date of its filing, and this action was filed to recover the asserted refund. In its findings of fact, the court found among other things that Watson held the invention relating to the carts for more than six months prior to the execution of the contract with O'Donnell; that he did not hold the invention primarily for sale to customers in the ordinary course of his trade or business; and that the agreement was a license agreement and did not constitute a sale of the invention. In its conclusions of law, the court concluded that for income tax purposes the contract did not constitute a sale of the invention; and that the income received from the corporation constituted ordinary income, not capital gain. Judgment was entered against the taxpayers, and they appealed.

It is a firmly accepted principle of law that if the patentee conveys by an instrument in writing the exclusive right to make, use, and vend the invention throughout the United States, or an undivided part or share of that exclusive right, or the exclusive right under the patent within a specified area within the United States, the conveyance constitutes an assignment of the patent, complete or partial as the case may be; and that a transfer short of that is not an assignment but a license. Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923; United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362; Doherty Research Co. v. Vickers Petroleum Co., 10 Cir., 80 F.2d 809, certiorari denied 299 U.S. 545, 57 S.Ct. 9, 81 L.Ed. 401; Broderick v. Neale, 10 Cir., 201 F.2d 621. In language too clear for doubt, the agreement into which Watson and O'Donnell entered expressly granted to Telescope Carts, Inc., the exclusive right to make,

use, and vend the carts throughout the United States.

█ The agreement between Watson and O'Donnell was entitled License Agreement, and in it the parties were referred to as licensor and licensee, respectively. But nomenclature of that kind has little if any significance in resolving the question whether the instrument amounted to an assignment or was a license. The calling of the instrument a license agreement, and the denomination of the parties thereto as licensor and licensee, respectively, did not fix, limit, or qualify the scope and effect of the grant. The legal question whether the instrument constituted an effective assignment or was a license must be determined by considering together the several provisions contained in the instrument, not its title or the manner in which reference was made to the parties. Heryford v. Davis, 102 U.S. 235, 243, 26 L.Ed. 160; D. M. Sechler Carriage Co. v. Deere & Mansur Co., 7 Cir., 113 F. 285; Watson v. Commissioner, 9 Cir., 62 F.2d 35; Hook v. Hook & Ackerman, 3 Cir., 187 F. 2d 52; Kronner v. United States, 110 F. Supp. 730, 126 Ct.Cl. 156; Parke, Davis & Company, 31 B.T.A. 427; Edward C. Myers, 6 T.C. 258.

The agreement contained a provision relating to the termination of its exclusive character. The substance of the provision was that, in the event the corporation should after one year from the date of the agreement fail to make and sell 2,500 carts during any six-months period, the licensor should be free to license others to manufacture and sell carts. But that provision concerned itself exclusively with a condition subsequent. It did no more than provide that upon the occurrence of a stated event the grantor was empowered to terminate the exclusive right and title theretofore conveyed. It did not detract from the effectiveness of the agreement as constituting an assignment of the patent rights. Boesch v. Graff, 133 U.S. 697, 10 S.Ct. 378, 33 L.Ed. 787; Green v. Le Clair, 7 Cir., 24 F.2d 74; Commissioner of Internal Revenue v. Celanese Corp., 78 U.S. App.D.C. 292, 140 F.2d 339; Allen v. Werner, 5 Cir., 190 F.2d 840; Kronner v. United States, supra; Edward C. Myers, supra.

The contract contained a further provision that the rights of the licensee thereunder should not be assigned without the consent of the licensor having been obtained in writing. That precautionary provision was intended to protect the rights of the parties under the contract, not to proscribe, limit, or nullify their intent and purpose to vest immediately in the transferee the right to manufacture, sell, and use the carts throughout the life of the patent, as well as any extension or extensions thereof. Platt v. Fire-Extinguisher Manufacturing Co., 3 Cir., 59 F. 897; Commissioner of Internal Revenue v. Celanese Corp., supra; Carl G. Dreymann, 11 T.C. 153.

The agreement contained a provision for payment of royalties. That provision merely fixed the compensation to be paid as consideration for the transfer. It did not reserve to Watson any control over the patent or its use. It did not limit or qualify the scope of the grant. And since the agreement contained language vesting in the corporation the exclusive right to manufacture, sell, and use carts throughout the United States, the provision for payment of royalties did not change the nature of the transfer to a license. Rude v. Westcott, 130 U.S. 152, 9 S.Ct. 463, 32 L.Ed. 888; Hook v. Hook & Ackerman, supra.

The agreement contained two provisions relating to suits for infringement. The substance of one provision was that in the event a suit were filed charging that the manufacture and sale of carts designed by Watson constituted infringement of a prior patent, payment of royalties to Watson should be suspended during the pendency of the action; that in the event it should be judicially determined that such invention did not infringe, payment of the suspended royalties should be paid in a lump-sum; and that in the event it should be determined that the invention did infringe, payment of royalties under the agreement should

cease. That provision concerned itself solely and exclusively with the question of royalties in the event of a suit or suits charging that the Watson invention infringed. It did not reserve to Watson or vest in him any property or proprietary rights in the invention. The other provision obligated Watson and the corporation to act jointly in resisting infringement of the Watson invention, and fixed the manner in which damages recovered for infringement should be divided between them. Without such a provision, the Telescope Carts, Inc., would have the right to institute and maintain in its own name an action for infringement of the patent and retain all damages recovered. Waterman v. Mackenzie, supra. And in the absence of a provision of that nature, Watson would have been under no obligation to institute and maintain alone or in conjunction with the company any action for infringement. The underlying reason for the insertion of that provision must have been that in the prosecution of such an action the presence and aid of the inventor would be of value in protecting the property and proprietary rights of the corporation in the invention and the patent covering it, and would also be of value in safeguarding the financial interest of the patentee in respect to continued payment of royalties. The provision was one designed to protect and safeguard such respective rights and interests. It was not intended to reserve to Watson any property or proprietary right in the invention which was at variance with an assignment to the corporation of the right to manufacture, sell, and use carts throughout the life of the patent. D. M. Sechler Carriage Co. v. Deere & Mansur Co., supra. Commissioner of Internal Revenue v. Celanese Corp., supra.

The contract between Watson and O'Donnell constituted an assignment to the corporation of the invention relating to the collapsible carts. Such assignment amounted to a sale of a capital asset. And inasmuch as Watson held the invention for more than six months prior to the transfer, and did not hold it primarily for sale to customers in the ordinary course of his trade or business, the income which the taxpayers received in the form of royalties from the corporation constituted long-term gain as distinguished from ordinary income. Hofferbert v. Briggs, 4 Cir., 178 F.2d 743; Kavanagh v. Evans, 6 Cir., 188 F.2d 234; Allen v. Werner, supra; Kronner v. United States, supra; Edward T. Myers, supra.

The judgment is reversed and the cause is remanded with directions to enter judgment for the taxpayers.