ROBERT L. HOLCOMB AND SALLY O'B. HOLCOMB, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 57590, 59292.   Filed May 23, 1958.

*William Reeves, Esq.,* and *Samuel A. Gilliland, Esq.;* for the petitioners.

*John M. Doukas, Esq.,* for the respondent.

ATKINS, *Judge:* The respondent determined deficiencies in income tax of the petitioners for the years 1951, 1952, and 1953 in the amounts of $4,556.35, $1,081.79, and $2,054.36, respectively.   The single issue framed by the pleadings is whether payments received by the petitioners in the above years from the transfer of patent rights constituted long-term capital gains as they were reported in the income tax returns or whether such payments were royalties taxable as ordinary income as determined by the respondent.

On brief counsel for the respondent concedes that the payments received by the petitioner Robert L. Holcomb in the taxable years fall within the provisions of section 117 (q) of the Internal Revenue Code of 1939 as added by the Act of June 29, 1956, and therefore such payments represented gains from the sale of a capital asset and were properly reported by him as long-term capital gains.   There is no such concession as to the payments received by the wife.

### FINDINGS OF FACT.

Some of the facts are stipulated and are incorporated herein by this reference.

The petitioners are husband and wife who reside in Fairfield, Connecticut.   They filed joint income tax returns for each of the taxable years with the collector or director of internal revenue for the district of Connecticut.

The petitioner Robert L. Holcomb, sometimes referred to herein as Holcomb, is president of the Canfield Rubber Company and has been associated with that company for many years.   The petitioner Sally O'B. Holcomb, sometimes herein called Sally Holcomb, is a housewife and was such throughout the taxable years.

In 1945 Holcomb discovered and invented certain improvements and inventions relating to sealing washers used separately or in conjunction with nails or other fastening devices, which sealing washers are made of rubber or any other synthetic elastomer or the like for the purpose of sealing off moisture, rain, and liquids.   On or about

November 26, 1945, Holcomb had molds made for the casting of sealing washers and tested the examples that were cast in the molds. At or about that time he had completed the design of his invention. Holcomb terminated his inventive activities with the end of the year 1945, except for an improvement to his washer as to which a patent was issued in 1955, but which has never been used. Holcomb's employer had no rights in his invention. Neither of the petitioners, during the taxable years, was in the business of inventing, dealing in, or buying and selling inventions or patents.

In 1946 Holcomb applied for letters patent on his invention and on April 13, 1948, United States Patent No. 2,439,516 was issued to him.

On October 4, 1946, Holcomb made a gift to Sally Holcomb of a one-half undivided interest in his invention and the application for letters patent which was then being drafted. There was no monetary consideration for the gift. Sally Holcomb did not participate in the development of the invention and did not share any of the development expenses.

On October 4, 1946, the petitioners entered into an agreement entitled "License Agreement" with the Gora-Lee Corporation, a Connecticut corporation, wherein, after recitation of ownership by the petitioners of the entire right, title, and interest to improvements, inventions, and an application for letters patent relating to sealing washers, the granting part provided that the petitioners "hereby exclusively license and empower" the Gora-Lee Corporation "to manufacture and sell * * * said 'sealing washers' * * * within the United States and foreign countries and to sub-license others in the United States to manufacture and sell 'sealing washers' * * * within the United States and foreign countries." The consideration for the conveyance of such rights was the agreement of the Gora-Lee Corporation to pay to the petitioners as "royalty or commission" specified percentages of variable gross selling prices of the washers, payable monthly, with a minimum "royalty or commission" based on monthly sales of 50,000 washers. The provisions of the agreement were to remain in effect until December 31, 1963, or until the expiration of the patent which might be issued with respect to the sealing washers, whichever might be later.

On February 28, 1947, the petitioner and the Gora-Lee Corporation by written agreement changed the rate of the "royalty" to be paid to the petitioners per thousand of washers sold. That agreement made no other change in the terms of the agreement of October 4, 1946.

On November 19, 1948, the petitioners and the Gora-Lee Corporation entered into a further amendment to the agreement of October 4, 1946. Insofar as here material the 1948 agreement recited that United States Letters Patent No. 2,439,516 had been issued with respect to the sealing washers, and that the 1946 agreement was thereby amended to read, in part, as follows:

1. The Parties of the First Part hereby exclusively license and empower the Party of the Second Part to manufacture, use and sell subject to the terms and provisions hereof said "Sealing Washers" separately or in conjunction with nails or other fastening devices within the United States and all foreign countries and to sub-license others in the United States and all foreign countries to manufacture, use and sell "Sealing Washers" separately or in conjunction with nails or other fastening devices within the United States and all foreign countries.

Other provisions of the 1948 agreement related to the percentage of selling price of the washers that was to be paid to the petitioners as "royalty, commission or installment payment," the time of payment, and the effect of returned shipments and unpaid sales on the computation of the monthly payments to the petitioners.

Under the above agreements the Gora-Lee Corporation paid to the petitioners the following amounts in the taxable years:

| | |
|---|---|
| 1951 | $11, 593. 21 |
| 1952 | 2, 955. 78 |
| 1953 | 5, 023. 44 |

The petitioners reported the foregoing amounts in their returns as long-term capital gains. The amounts received by the petitioners in 1951 and 1952 were reduced by them in their returns by the amounts of $27.50 and $317.25, respectively, such reductions representing the basis in their hands of the patented invention.

In determining the deficiences the respondent treated the aforesaid amounts received by the petitioners as royalties, taxable as ordinary income.

### OPINION.

After the issuance of the notices of deficiency in this case, Congress, by Act of June 29, 1956 (Pub. L. 629, 84th Cong., 2d Sess., 1956–2 C. B. 1165) enacted section 117 (q) [1] as an addition to the Internal Revenue

---

[1] *Section 117 (q) provides:*
(q) TRANSFER OF PATENT RIGHTS.—
    (1) GENERAL RULE.—A transfer (other than by gift, inheritance, or devise) of property *consisting of all substantial rights to a patent,* or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, regardless of whether or not payments *in consideration of such transfer* are—
        (A) payable periodically over a period generally coterminous with the transferee's use of the patent, or
        (B) *contingent* on the productivity, use, or disposition of the property transferred.
    (2) "HOLDER" DEFINED.—For purposes of this subsection, the term "holder" means—
        (A) any individual whose efforts created such property, or
        (B) any other individual who has acquired his interest in such property in exchange for consideration in money or money's worth paid to such creator prior to actual reduction to practice of the invention covered by the patent, if such individual is neither—
            *    *    *    *    *    *    *
            (ii) related to such creator (within the meaning of paragraph (3)).
    (3) EXCEPTIONS.—This subsection shall not apply to any transfer described in paragraph (1)—
        *    *    *    *    *    *    *
For purposes of this paragraph, the term "related person" means a person, other than a brother or sister (whether of the whole or half blood), with respect to whom a loss resulting from the transfer would be disallowed under section 24 (b).
    (4) APPLICABILITY.—This subsection shall apply with respect to any amount received, or payment made, pursuant to a transfer described in paragraph (1) in any taxable year beginning after May 31, 1950, regardless of the taxable year in which such transfer **occurred.**

Code of 1939, and the respondent now concedes on brief that the petitioner Robert L. Holcomb's share of the payments received from the Gora-Lee Corporation was properly reported as long-term capital gain. However, he contends that Sally Holcomb is not entitled to the benefit of section 117 (q) since she does not qualify as a "holder" within the meaning of section 117 (q) (2), she not having received her interest in the patent for a consideration in money or money's worth, and in addition she being related to the creator within the meaning of section 117 (q) and section 24 (b). He concedes, however, that section 117 (q) does not affirmatively operate to tax the amounts received by her, since the congressional committee reports make it clear that section 117 (q) was not intended to affect the operation of existing law in those areas outside its scope.[2] No regulations under section 117 (q) of the 1939 Code have been promulgated. But see regulations (T. D. 6263, filed Nov. 5, 1957) under the similar, provisions of the 1954 code, section 1235.[3]

The respondent takes the position that since the payments received by Sally Holcomb fall without the provisions of section 117 (q), the taxability of such amounts is governed by the position taken by the respondent in Mim. 6490, 1950–1 C. B. 9. Specifically he contends that inasmuch as she retained an interest in the profitable exploitation of the patent by the receipt of a percentage of the proceeds from the sale of the patented devices, the transaction as to her interest did not amount to a "sale or exchange" and that hence the amounts received are taxable as ordinary income.

---

[2] Section 1235, I. R. C. 1954, which was enacted before section 117 (q) of the 1939 Code, is in all material respects the same as section 117 (q). In the Senate Finance Committee Report (S. Rept. No. 1622, 83d Cong., 2d Sess., p. 441) accompanying the 1954 Code, it is stated :

* * * In enacting this section, for the specific purposes set forth in this report, your committee has no intention of affecting the operation of existing law in those areas without its scope. For example, the tax consequences of the sale of patents in years to which this section is inapplicable, *or by individuals who fail to qualify as "holders,"* or by corporations, *is to be governed by the provisions of existing law as if this* section had not been enacted. Similarly, *no inference is to be drawn* from this section as to what constitutes a "sale or exchange" * * *. [Emphasis supplied.]

In the committee reports which accompanied the bill that became section 117 (q) (H. Rept. No. 1607, 84th Cong., 1st Sess., 1956–2 C. B. 1226 ; S. Rept. No. 1941, 84th Cong., 2d Sess., 1956–2 C. B. 1227), it was stated :

This bill adds a new subsection to section 117 of the 1939 Code which is substantially the same as section 1235 of the 1954 Code. This subsection is to apply to payments made, and amounts received, in years to which the 1939 Code applies, beginning after May 31, 1950.

When section 1235 was originally enacted, it was stated in the committee report that there was no intention of affecting the operation of existing law in those areas outside the scope of the section, and no inference was to be drawn from section 1235 as to what constituted a "sale or exchange" in the case of transfers not within the scope of the section. Similarly, no inference is to be drawn from the enactment of this bill.

[3] Sec. 1.1235–1 (b), Income Tax Regs., T. D. 6263, 57–2 C. B. 570, 571, states as follows :

(b) *Scope of section 1235.* If a transfer is not one described in paragraph (a) above, section 1235 shall be disregarded in determining whether or not such transfer is the sale or exchange of a capital asset. *For example, a transfer by a person other than a holder* or a transfer by a holder to a related person is not governed by section 1235. The tax consequences of such transfers shall be determined under other provisions of the internal revenue laws. [Emphasis supplied.]

Sally Holcomb concedes that she does not come within the provisions of section 117 (q), but contends that nevertheless, under other provisions of the statute and the adjudicated cases, the transfer of her interest constituted a sale and that the amounts she received constituted long-term capital gain.

We think it clear, as both parties agree, that the taxability of the payments received by Sally Holcomb is not governed by the provisions of section 117 (q), and that such taxability is to be determined by other provisions of the statute and the adjudicated cases, uninfluenced by the enactment of section 117 (q). See *F. H. Philbrick*, 27 T. C. 346, for a discussion of the reasons for enactment of section 117 (q).

The argument which the respondent here makes is the one which has often been presented before this and other courts, and which has been rejected. The fact that the terms "licensee," "sublicense," and "royalty" are used is not determinative. As stated in *Watson* v. *United States*, (C. A. 10) 222 F. 2d 689, "nomenclature of that kind has little if any significance in resolving the question whether the instrument amounted to an assignment or was a license." The determinative factor as to the consequences of the conveyance of the rights in an invention or patent is the intention of the parties as evidenced by their contracts and the legal effect of those contracts. *Watson* v. *United States, supra; Kronner* v. *United States* (Ct. Cl.) 110 F. Supp. 730; *Rose Marie Reid*, 26 T. C. 622, 632; *Thornton G. Graham*, 26 T. C. 730, 739. The fact that the sales price is based upon production does not prevent the transaction from being a sale. *Edward C. Myers*, 6 T. C. 258; *Vincent A. Marco*, 25 T. C. 544 (appeal dismissed C. A. 9); *Commissioner* v. *Hopkinson*, (C. A. 2) 126 F. 2d 406; and *United States* v. *Carruthers*, (C. A. 9) 219 F. 2d 21.

The respondent in support of his argument cites *Bloch* v. *United States*, (C. A. 2) 200 F. 2d 63, certiorari denied 345 U. S. 935, where on facts similar in some respects to those involved in the instant case, it was held that amounts paid to nonresident aliens constituted royalties taxable under section 211 (a), I. R. C. 1939. The agreement in that case differed from that involved here in that in that case the "licensee" had the right to discontinue making the patented articles upon the giving of notice, in which case the agreement would end. However, of more importance is the fact that that case did not involve section 117. As stated by the United States Court of Appeals for the Ninth Circuit in *United States* v. *Carruthers, supra:*

The first, *Bloch* v. *United States*, 2 Cir., 200 F. (2d) 63 was a case involving taxation of non-resident aliens and does not mention § 117. However, it is interesting to note that the court in the *Bloch* case distinguished its own prior decision in *Commissioner* v. *Hopkinson*, 2 Cir., 126 F. 2d 406 on the basis that

the rights of a non-resident were not involved in the *Hopkinson* decision. The *Hopkinson* case held, contrary to the government's position in that case and in the case at bar, that royalties received subsequent to a transfer of patents as consideration therefor were taxable as long-term capital gains under § 117.

Attention is also called to the fact that in *Cory* v. *Commissioner*, 230 F. 2d 941, affirming 23 T. C. 775, the Court of Appeals for the Second Circuit itself recognized that in determining whether the profit resulting from a transfer by a citizen of interests in copyrights is a capital gain or ordinary income, cases dealing with the taxation of transfers of interests in copyrights (or patents) by nonresident aliens are not determinative because of the congressional purpose involved in sections 211 and 212 of the 1939 Code.

Accordingly, we do not consider the *Bloch* case, *supra*, as controlling authority in the instant case.

Under the facts established by the stipulation and the evidence, and in the light of prior adjudications of this and other courts, we think it clear that Sally Holcomb's share of the income received from the Gora-Lee Corporation constituted long-term capital gain within the meaning of section 117 (a) of the Internal Revenue Code of 1939. The evidence shows, and the respondent does not question, that Holcomb made a valid gift to his wife, and that she thereupon obtained ownership of an interest in the invention and in the application for letters patent that were being drafted. Since her interest was received by gift, the holding period of the property in her hands is the same as the holding period of her husband. Code secs. 113 (a) (2), 117 (h) (2). Holcomb had completed the design of his invention and reduced it to practice more than 6 months prior to the assignment to Gora-Lee Corporation. The petitioners were not in the business of inventing, dealing in, or buying and selling inventions, and Holcomb's invention was not held by the petitioners for sale to customers in the ordinary course of trade or business. The transfer to the Gora-Lee Corporation conveyed all substantial rights in and to the invention. Under both the 1946 and 1948 agreements the petitioners granted an exclusive right to Gora-Lee Corporation within the United States and all foreign countries with the right to sublicense others. Whatever limitation inhered in the words "manufacture and sell" in the 1946 agreement was cured in the 1948 agreement which granted the exclusive right to "manufacture, use and sell" in the United States and foreign countries. The agreement ran for the full life of the patent which had been granted prior to the 1948 agreement.

It is our conclusion that the payments received by Sally Holcomb constituted long-term capital gain.

*Decisions will be entered for the petitioners.*