**HOOK et al. v. HOOK & ACKERMAN, Inc.**

Nos. 10182, 10221.

United States Court of Appeals
Third Circuit.

Argued Oct. 5, 1950.

Decided Feb. 5, 1951.

53

William B. Jaspert, Pittsburgh, Pa., for C. Howard Hook et al.

Harry Price, New York City (William J. Powell, Pittsburgh, Pa., on the brief), for defendant-appellee, Hook & Ackerman.

Before ALBERT LEE STEPHENS, GOODRICH and STALEY, Circuit Judges.

STEPHENS, Circuit Judge.

The parent case here upon appeal was filed July 19, 1949. In 1938, C. Howard Hook, a resident of Pittsburgh, Pennsylvania, and Harold S. Ackerman, a resident of Larchmont, New York, together organized "Hook & Ackerman, Inc.", under the incorporation laws of Pennsylvania. In August of 1939, Ackerman applied for a patent appertaining to a gas boiler, and in the same month he granted a nonexclusive license to the corporation, Hook & Ackerman, Inc., to manufacture boilers in accordance with the invention. Also, in the same month and year, Ackerman transferred one-half interest in the invention to one McCance for the benefit of Hook, in consideration of Hook's aid and cooperation with the corporation in the development of business in connection with the invention. On June 6, 1940, the individuals Hook and Ackerman agreed together that neither would make any agreements, nor make, use or sell the invention embodied in the patent application without their mutual consent thereto in writing. The application for the patent is alleged to have ripened into an issued patent in July, 1941, numbered 2,247,796.

In 1942, the individuals Hook and Ackerman granted a nonexclusive license under the patent to Sears, Roebuck & Co. On September 28, 1945, Hook sold all of his interest in the corporation to one John F. Baier who, at time of suit, was president of the corporation Hook & Ackerman, Inc. On this same date Hook and Ackerman in a written instrument designated an "exclusive license," granted the corporation the exclusive right to make, use and sell products embodying the patented invention, subject to the license outstanding to Sears, Roebuck & Co., and the latter license by the same writing was transferred to the corporation. The same writing contained provisions for payment of royalties to Hook and Ackerman together with other beneficial rights to them under defined contingencies.

In 1945, or thereabouts, Hook, as an individual, entered into a partnership with a resident of Pittsburgh, Pennsylvania, one W. W. Miller, and the firm functioned under the firm name and style of "Hook & Miller". A controversy appears to have arisen between Hook & Miller and the corporation, in which Hook and Miller claim injury to their business through the corporation's threats of litigation against customers of Hook & Miller on the ground that the "Hook & Miller" boiler infringes the patent which is used in the "Hook & Ackerman" boiler and because of unfair trade. For related litigation see footnote 1.[1]

1. On January 20, 1949, Ackerman, a resident of New York and an officer and stockholder of the corporation, filed, solely on his own behalf, an action against Hook and Miller, the corporation Hook & Ackerman, Inc., and others, in the United States District Court for the Eastern District of Pennsylvania, for a declaratory judgment as to patent infringement, the scope of the patent, restraint of unfair competition and of the "palming off" of the boilers of Hook &

The instant case grew out of alleged facts as above related and was begun by the partners, Hook and Miller, in the United States District Court for the Western District of Pennsylvania against the corporation Hook & Ackerman, Inc. It is alleged in the complaint that the corporation has its principal place of business in that district, and that it is threatening suit against Hook & Miller customers on the ground that the Hook & Miller boiler infringes the patent in suit. By the complaint Hook and Miller seek a declaration that the "Hook & Miller" boiler embodies none of the inventions covered by the patent, and that therefore the patent is not being infringed by them. They pray in their complaint that the corporation and its agents be enjoined from asserting, contending, claiming, or alleging that appellants' boiler infringes the patent, and from suing appellants or appellants' customers in other districts pending disposition of the case. The validity of the patent is not questioned in any pleading before the court.

The corporation filed an answer, counter-claim, and cross-complaint against both the individuals Hook and Miller doing business as a partnership, and a third party complaint against Ackerman, then moved, inter alia, to dismiss the Hook and Miller complaint upon the ground that Ackerman, a resident of New York, had not been made a party to the litigation and that he was an indispensable party. The appellants moved on their behalf for the dismissal of the counter-claim, cross-complaint and third party complaint.

The motion to dismiss the Hook and Miller complaint for lack of an indispensable party was granted under the holding that a suit for a declaratory judgment[2] of non-infringement calls into action the same requirements as to parties as does an ordinary infringement suit except that their position in the litigation is reversed. For such reason, says the trial court, appellants must join as defendants all those who would have been "necessary parties" plaintiff had the action been in the form of an infringement suit by the defendant against the plaintiffs as infringers. The court concluded that Ackerman was an indispensable party since the owner of a patent is an indispensable party to a suit for patent infringement brought by an exclusive licensee, and also because, under Title 35 U.S.C.A. § 67, damages for patent infringement may be recovered in an action brought in the name of the "patentee, assignee, or grantee". The court held that since Ackerman resided in New York, and Section 1391(b) of Title 28, U.S.C.A.[3] determines venue in a suit for declaratory judgment of non-infringement, there would be lack of venue jurisdiction.

Miller as the boilers manufactured by Hook & Ackerman, Inc. The complaint was held by the District Court for the Eastern District of Pennsylvania to have stated a "cause of action" for patent infringement within the venue jurisdiction of that court. Ackerman v. Hook, D.C.Pa.1949, 82 U.S.P.Q. 312.

On later consideration of a motion to dismiss the complaint for want of jurisdiction, the motion was granted as to certain defendants. Ackerman v. Hook, D.C.Pa.1949, 83 U.S.P.Q. 300. The trial court held that all of the relief asked by the plaintiff Ackerman was actually for the injury of the defendant corporation. Upon rearrangement, therefore, the corporation had to be placed on the plaintiff's side of the controversy. Since Ackerman, a New York resident, would on rearrangement find himself with a Pennsylvania resident [the corporation], jurisdiction based on diversity of citizenship would fail. The complaints of patent infringement, which were not based on diversity, were dismissed because none of the defendants was alleged to have a regular and established place of business in the Eastern District of Pennsylvania, as required under Title 28, U.S.C.A. § 1400(b).

An appeal was taken to this court and we affirmed the judgment of dismissal. Ackerman v. Hook, 3 Cir., 1950, 183 F. 2d 11.

2. Declaratory Judgment Act, June 25, 1948, c. 646, 62 Stat. 964, as amended May 24, 1949, c. 139, § 111, 63 Stat. 105, Title 28, U.S.C.A. §§ 2201, 2202.

3. 28 U.S.C.A. § 1391(b): "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, except as otherwise provided by law."

The trial court also held that the motion of Hook and Miller for dismissal of the counter-claim, cross-complaint and third party complaint should be granted since Ackerman was also a "necessary party" to the determination of the claims of infringement in the counter-claim and cross-complaint. As to the other relief asked in the counter-claim and cross-complaint, there was held to be no jurisdiction since diversity of citizenship jurisdiction was lacking. The third party complaint sought against Ackerman was dismissed since the court would not have jurisdiction over him except through his voluntary appearance or consent, he being a resident of New York. Hook et al. v. Ackerman, Inc., D.C. 1950, 89 F.Supp. 238. This appeal and cross-appeal followed.

■ The alleged charges of patent infringement present an "actual controversy" calling for declaratory relief, A. L. Smith Iron Co. v. Dickson, 2 Cir., 1944, 141 F.2d 3, within the jurisdiction of the district court under Title 28, U.S.C.A. § 1338. See Littlefield v. Perry, 1874, 21 Wall. 205, 88 U.S. 205, 22 L.Ed. 577.

The agreement entered into on September 28, 1945, between Hook, Ackerman, and the corporation, is entitled "license agreement". After it is recited in the agreement that Hook had sold his interest in the corporation to Baier, the agreement contains language specifically transferring to the corporation for the full life of the patent, extensions and reissues thereof, the "exclusive right and license [subject only to the outstanding license of January 28, 1942, to Sears, Roebuck & Co.] to manufacture, use and sell [boilers covered by the patent] and to license others so to do." The agreement contains an assignment of the Sears, Roebuck & Co. licensing agreement to the corporation in its entirety. By the terms of the agreement the corporation contracted to pay a royalty to the individuals Hook and Ackerman on each boiler manufactured. If the payments to Hook in any one year should not amount to five thousand dollars, he is given the right to terminate the exclusive features of the agreement.

In the event of infringement of the patent by third parties, the corporation is given the right to bring suit in its own name joining Hook as a party plaintiff if it so desires. Such suit is to be brought at the expense of the corporation, and recovery is to be retained by the corporation so long as the royalties are paid. In the event of bankruptcy, insolvency or dissolution of the corporation [while yet owning the rights conveyed to it by the agreement], title to the patent shall vest in Baier and Ackerman. In the event that the corporation is unable or refuses to pay the required royalties to Hook, he is given the right to manufacture, use, sell and license others, to products covered by the patent. And should this happen, Ackerman is to receive the same benefits as though the corporation and not Hook was operating except that payment of minimum royalties are not to be required.

The rights transferred are not limited geographically. No rights to make, use or sell the invention are reserved to the transferors, except for those rights which arise on the occurrence of the contingencies mentioned in the agreement.

In Waterman v. Mackenzie, 1891, 138 U.S. 252, 11 S.Ct. 334, 336, 34 L.Ed. 923, the plaintiff, claiming to be sole and exclusive owner of a patent, filed a bill in equity, alleging infringement by defendants and praying for varied relief. The defendants alleged that the plaintiff, at the time of filing the bill, was not possessed of the patent or of an exclusive right under it because of certain assignments. The plaintiff had assigned, and recorded, the whole patent to his wife, who later entered into a "license agreement" with plaintiff by which she granted to him "the sole and exclusive right and license to manufacture and sell" the products embodied in the patent throughout the United States, in consideration of his agreement to pay her royalties. Plaintiff's wife later assigned the patent to a firm as security for a promissory note executed by plaintiff and his wife, in return for a loan. Shortly before the bill was filed, the plaintiff's wife assigned and recorded all of her remaining

interest in the patent to plaintiff. The trial court entered a decree dismissing the bill. It was held that the last assignment transferred nothing to plaintiff since at that time the wife had nothing to assign. The earlier "license agreement" was held not to enable the plaintiff to maintain the action without joining the holder of the legal title.

The Supreme Court, in affirming the decree, held that where there has been a transfer of the right to make, use and vend the invention throughout the United States, or a specified part of the United States, it amounts to an assignment, irrespective of the name which is affixed to the agreement, vesting in the assignee title in that much of the patent with a right to sue infringers in his name alone. The language of the court is set out in the margin.[4] The court held that since the "license agreement" transferred to the plaintiff did not include the right to *use* the products embodied in the patent, it was a license and did not give the licensee the right to sue alone, at law or in equity, for an infringement of the patent.

What purports to be an assignment may be a license only, and the court will examine the "license" or "assignment" to determine the legal effect of the transfer agreement. Littlefield v. Perry, 1874, 21 Wall. 205, 88 U.S. 205, 22 L.Ed. 577.[5] The

4. Mr. Justice Gray, in Waterman v. Mackenzie, 1891, 138 U.S. 252, stated at page 255, 11 S.Ct. 334, 335, 34 L.Ed. 923: "Every patent issued under the laws of the United States for an invention or discovery contains 'a grant to the patentee, his heirs and assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the invention or discovery throughout the United States and the territories thereof.' * * * The monopoly thus granted is one entire thing, and cannot be divided into parts, except as authorized by those laws. The patentee or his assigns may, by instrument in writing, assign, grant, and convey, either (1) the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States. * * * A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers. In the second case, jointly with the assignor. In the first and third cases, in the name of the assignee alone. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement. * * *" And 138 U.S. at page 256, 11 S.Ct. at page 335, 34 L.Ed. 923: "Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions. For instance, a grant of an exclusive right to make, use, and vend two patented machines within a certain district is an assignment, and gives the grantee the right to sue in his own name for an infringement within the district, because the right, although limited to making, using, and vending two machines, excludes all other persons, even the patentee, from making, using, or vending like machines within the district. * * *"

5. Gayler v. Wilder, 1850, 10 How. 477, 51 U.S. 477, 13 L.Ed. 504. While the legal effect of the terms used, and not the name applied to the instrument containing them will determine whether a transfer of patent rights is an assignment or a license, nevertheless the language used is entitled to its proper weight. E. W. Bliss Company v. United States, 1920, 253 U.S. 187, 40 S.Ct. 455, 64 L. Ed. 852. The transfer of the exclusive right and monopoly under a patent to make, use and vend the invention, and to license others to do so, during the entire term of the patent, without any limitation in the grant to any particular portion of the United States, vests title to the patent in the transferee, even though the assignment purports to be a "license contract", as in Heywood-Wakefield Co. v. Small, 1 Cir., 1938, 96 F.2d 496, certiorari dismissed, 1938, 305 U. S. 663, 59 S.Ct. 54, 83 L.Ed. 430. See Crown Die & Tool Company v. Nye Tool & Machine Works, 1923, 261 U.S. 24, 43 S.Ct. 25, 67 L.Ed. 516; Doherty Research Co. v. Vickers, 10 Cir., 80 F.2d 809, certiorari denied, 1936, 299 U. S. 545, 57 S.Ct. 9, 81 L.Ed. 401; Six Wheel Corp. v. Sterling Motor Truck Co. of California, 9 Cir., 1931, 50 F.2d

"license agreement" before us grants to the corporation the exclusive right to make, use and sell the invention, and to license others to do so. Rights of the transferors to the invention arise only upon the occurrence of described contingencies. The corporation is expressly authorized to sue in its own name to protect its interests in the patent and invention and to retain as its own any recoveries in any such suit.

■ Viewing the agreement as a whole and applying the rule in the Waterman v. Mackenzie case, supra, we hold it to be an assignment of the patent to the corporation, entitling the corporation to sue and to be sued in relation to it, in its name alone. The assignment to the corporation of the nonexclusive license previously granted to Sears, Roebuck & Co., further emphasizes the fact that there was an intent to pass full ownership to the corporation, to be defeated only on the occurrence of defined contingencies, none of which is alleged to have occurred. See Paul E. Hawkinson Co. v. Carnell, 3 Cir., 1940, 112 F.2d 396, 398. See also Heywood-Wakefield Co. v. Small, 1 Cir., 1938, 96 F.2d 496, 499. We quote therefrom in the margin.[6]

■ Lack of recordation in the patent office can have no bearing on the result here, since there are no intermediary interests affected. Title 35, U.S.C.A. § 47. The fact that royalties are reserved does not change a transfer from an assignment to a license. Rude v. Westcott, 1889, 130 U.S. 152, 9 S.Ct. 463, 32 L.Ed. 888; Littlefield v. Perry, supra. Forfeiture clauses for nonperformance of conditions do not prevent title to a patent from passing to an assignee. Littlefield v. Perry, supra, 21 Wall. at page 220, 22 L.Ed. 577.

The doctrine of Independant Wireless Telegraph Co. v. Radio Corp. of America, 1926, 269 U.S. 459, 463, 472, 46 S.Ct. 166, 171, 70 L.Ed. 357, is not in conflict with our conclusions. In that case an exclusive licensee was permitted to join as involuntary plaintiff, a recalcitrant patent owner beyond the jurisdiction of the court. And the court specifically held such practice permissible " * * * if there is no other way of securing justice to the exclusive licensee * * *." There was no other way in the cited case if the transferring instrument constituted an exclusive license and not an assignment. The case had been tried and had been through the Circuit Court of Appeals on the "exclusive license" theory. 2 Cir., 297 F. 521. The transferring instrument was long and complicated and for these reasons the court accepted the situation as the other courts had considered it, saying it was " * * * loath to depart, if it could, from the theory on which the bill was framed and both courts [below] have acted, unless required to do so."

■ Ordinarily, a mere licensee of a patent has no right to sue an infringer, and

568; De Forest Radio Telephone & Telegraph Co. v. Radio Corp. of America, 3 Cir., 1927, 20 F.2d 598; Kenyon v. Automatic Instrument Co., 6 Cir., 1947, 160 F.2d 878; American Type Founders, Inc. v. Dexter Folder Co., D.C.N.Y.1943, 53 F.Supp. 602, affirmed 2 Cir., 1947, 164 F.2d 118.

6. There was granted to the corporation " * * * the exclusive right under the patent to make, use, and vend the invention during the entire term of the patent; and, as the grant to the patentee was the right to make, use, and vend the invention throughout the United States and the territories thereof, the exclusive right under the patent not being limited in the grant to any particular portion of the United States, and the grant being of the entire monopoly, the so-called license contract was an as-

signment and not a license, and vested the title to the entire patent in the Coach & Car Equipment Corporation. This being so, the corporation, having been allowed to intervene as a party plaintiff, may recover of the defendant such damages as it sustained from the date of its acquisition of the title to the patent (December 15, 1935) until the defendant ceased its infringement, subject to payments to Small as hereafter defined. Waterman v. Mackenzie, 138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923; Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24, 37, 38, 43 S.Ct. 254, 257, 67 L.Ed. 516; Krentler-Arnold Hinge Last Co. v. Leman, 1 Cir., 13 F.2d 796, 799, 802; Littlefield v. Perry, 21 Wall. 205, 220, 22 L.Ed. 577. In the last two cases the consideration for the license or assignment was an agreement to pay royalties."

the patent owner is under no duty to do so. An exclusive licensee obviously is in a different situation. One charged with infringement or one charging infringement would ordinarily have the right to bring the owner into the action to prevent another suit on the same alleged wrong. But these principles have no application where, as here, the defendant-cross-complainant stands as the owner under the assignment. The matter of infringement and of threats and of possible suits under claim of infringement and the issue of unfair trade can be settled by litigation between the corporation and Hook and Miller. And since the alleged infringers and unfair traders and the charging corporation all reside in the United States Judicial District in which the action is pending, the action on these issues can be tried there. As to venue, in infringement cases see 28 U.S.C.A. § 1400(b) and our decision in Ackerman v. Hook, 3 Cir., 1950, 183 F.2d 11. If Ackerman, as an individual, desires to enter the litigation to assist in having it end without its indirectly affecting his interests incidentally, he may do so. A. L. Smith Iron Co. v. Dickson, 2 Cir., 1944, 141 F.2d 3. It hardly need be added that any decision without his presence in the litigation would be short of res judicata as to him.

If it is true that the corporation has attempted to bring into the case issues which cannot be litigated without the presence of Ackerman, it does not follow that issues between the corporation and Hook and Miller cannot be tried without him. Hook and Miller appear to be free to sue the corporation as assignee of the patent. The corporation, as such assignee, appears to be free to sue Hook and Miller charging them with infringement and unfair trade. These issues are based upon the assignment as being presently effective. The corporation has not rescinded. If it deems itself entitled to damages arising out of the circumstances in which the assignment was made to it, it will have to seek them in a suit where the alleged misfeasors voluntarily appear or where the suit may be legally instituted against them.

We hold that Ackerman is not an indispensable party to the instant actions between the individuals Hook and Miller, on the one side, and the corporation, on the other, as herein stated.

We refer in the margin to some principles and authorities governing the subject of parties which may be helpful in the study of the main question under discussion in our text.[7]

The judgment dismissing the complaint, counterclaim, and cross-complaint is reversed. The judgment dismissing the third party complaint is affirmed.

Reversed in part, affirmed in part.

7. Rule 19 of the Federal Rules of Civil Procedure, 28 U.S.C.A. provides: "NECESSARY JOINDER OF PARTIES.

"(a) Necessary Joinder. Subject to the provisions of Rule 23 [applicable to class actions] and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff.

"(b) Effect of Failure to Join. When persons who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court as to both service of process and venue and can be made parties without depriving the court of jurisdiction of the parties before it, the court shall order them summoned to appear in the action. The court in its discretion may proceed in the action without making such persons parties, if its jurisdiction over them as to either service of process or venue can be acquired only by their consent or voluntary appearance or if, though they are subject to its jurisdiction, their joinder would deprive the court of jurisdiction of the parties before it; but the judgment rendered therein does not affect the rights or liabilities of absent persons.

"(c) * * *."

Rule 12 deals with the means of presenting defenses and objections. It provides, inter alia, that "* * * Every defense, in law or fact, to a claim for relief in any pleading * * * shall be asserted in the responsive pleading thereto if one is required, except that * * * failure to join an indispensable party"

may be made by motion. Greenberg **v.** Giannini, 2 Cir., 1944, 140 F.2d 550, 152 A.L.R. 966.

Rule 21 provides that: "* * * Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. * * *"

Rule 19 deals with "necessary" parties and "indispensable" parties. "Necessary" parties are not "essential" or "indispensable", by the terms of the rule itself. Rather, they are persons "* * * who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties". Federal Rules Civ.Proc., Rule 19(b), 28 U.S.C.A.

Joinder of necessary parties may be compelled on motion, but may be waived by failure to make such motion, subject, of course, to Rule 21 which permits parties to be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. If the necessary parties are subject to the jurisdiction of the court both as to venue and service of process and can be made parties without depriving the court of jurisdiction of the parties already before it, they must be joined. Federal Rules Civ.Proc., Rule 19(b), 28 U.S.C.A.

An "indispensable" party is one whose interests in the subject matter of the suit and in the relief sought are so bound up with that of the other parties that his legal presence as a party to the proceeding is an absolute necessity without which the court cannot proceed. Barney v. Baltimore City, 1867, 6 Wall. 280, 73 U.S. 280, 18 L.Ed. 825.

Rule 19(a) uses the term "joint interest", stating that those having such an interest "must" be joined. This provision applies to parties who were indispensable under the previous practice. Chidester v. City of Newark, 3 Cir., 1947, 162 F.2d 598; United States v. Washington Institute of Technology, 3 Cir., 1943, 138 F.2d 25.

Consult 3 Moore's Federal Practice (2nd ed., 1949) p. 2103; 2 Barron and Holtzoff, Federal Practice and Procedure, Rules ed., 1950, p. 52 et seq.

The rules as to parties apply to actions for declaratory judgment. Fed. Rules Civ.Proc., Rule 57, 28 U.S.C.A.; Samuel Goldwyn, Inc. v. United Artists Corp., 3 Cir., 1940, 113 F.2d 703.

The Supreme Court has stated that "* * * There is no prescribed formula for determining in every case whether a person * * * is an indispensable party * * *." Niles-Bement-Pond Co. v. Iron Moulders' Union, Local No. 68, 1920, 254 U.S. 77, 41 S.Ct. 39, 41, 65 L.Ed. 145. The determination of such a question necessarily entails a careful examination of the interest of the absent party and the type and effect of the relief sought.

The Hook and Miller complaint does not attack the operation or validity of rights transferred, as in Flynn v. Brooks, 1939, 70 App.D.C. 243, 105 F.2d 766, or to determine the validity of an absent party's undivided interest, as in Keegan v. Humble Oil & Refining Co., 5 Cir., 1946, 155 F.2d 971.

In an action to cancel a cloud upon title a grantor with contingent liability has been held not to be an indispensable party. Chance v. Buxton, 5 Cir., 1947, 163 F.2d 989; petition for rehearing denied, 1947, 164 F.2d 341.

Tenants-in-common are not indispensable parties to an action for ejectment, although they are interested in the outcome of the action. Chidester v. City of Newark, 3 Cir., 1947, 162 F.2d 598.

But co-tenants *are* indispensable parties in a partition proceeding. Grisso v. United States, 10 Cir., 1943, 138 F. 2d 996. Where some beneficiaries are seeking to dissolve or terminate a trust, the other beneficiaries are not indispensable since the court can do justice between the parties without prejudice to the rights of the absentees. Atwood v. Nat'l Bank of Lima, 6 Cir., 1940, 115 F.2d 861.

In an insurer's action for a declaratory judgment of nonliability under an insurance policy, the insured was not an indispensable party but only a necessary party whose joinder, since it would destroy jurisdiction, was not required. Glens Falls Indemnity Co. v. Fredericksen, D.C.Neb.1947, 8 F.R.D. 55.

In an action for cancellation of a contract of sale of a patent, the parties to the contract are indispensable, since no relief can be given which would not directly affect the rights of absent parties. Spanner v. Brandt, D.C.N.Y.1941, 1 F.R. D. 555.

Patentees who have parted with all ownership by assignment are not indispensable parties. American Type Founders, Inc. v. Dexter Folder Co., D.C.N.Y. 1943, 53 F.Supp. 602, affirmed 2 Cir., 1947, 164 F.2d 118; United States v. Washington Institute of Technology, 3 Cir., 1943, 138 F.2d 25, although they may be necessary parties who should be made parties if that can be done without depriving the court of jurisdiction. See Dental Precision Shoulder, Inc. v. L. D. Caulk Co. Inc., D.C.N.Y.1947, 7 F.R.D. 203.