TYCOM CORPORATION, a Delaware corporation, Plaintiff,

v.

REDACTRON CORPORATION, a Delaware corporation, and Sperry Rand Corporation, a Delaware corporation, Defendants.

Civ. A. No. 74-65.

United States District Court, D. Delaware.

Aug. 7, 1974.

David F. Anderson of Potter, Anderson & Corroon, Wilmington, Del., and Joseph L. Strabala of Phillips, Moore, Weissenberger, Lempio & Strabala, San Francisco, Cal., of counsel, for Tycom Corp.

Douglas E. Whitney of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Alan K. Roberts of Posnack, Roberts & Cohen, Camil P. Spiecens of Hane,

Baxley & Spiecens, and Bressler, Meislin, Tauber & Lipsitz, New York City, of counsel, for Redactron Corp.

Arthur G. Connolly, Jr. of Connolly, Bove & Lodge, Wilmington, Del., and George P. Williams, III, and James D. Fornari of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., and David K. Anderson, Leonard E. Dimare and Marshall M. Truex of Sperry Rand Corp., Blue Bell, Pa., of counsel, for Sperry Rand Corp.

## OPINION

LATCHUM, Chief Judge.

Defendant Redactron Corporation ("Redactron") has moved to dismiss this action pursuant to Rules 12(b), 17 and 19(a), F.R.Civ.P., on the ground that the plaintiff Tycom Corporation ("Tycom"), although charging the defendants with patent infringement, has failed to join an indispensable party, namely the patent owner.[1]

Tycom charges, inter alia, infringement by both Redactron and Sperry Rand of United States Patent 3,452,851 (the "Holmes patent") which issued on July 1, 1969 to Lawrence Holmes, Jr. ("Holmes").[2] The complaint further alleges that the Holmes patent since it issued has been exclusively licensed to Tycom under the terms of an Agreement dated October 1968 as amended [3] ("Agreement"), and that the Agreement grants to Tycom the right to bring infringement suits based on the Holmes patent, without the necessity of joining the patent owner Holmes.

---

1. Defendant Sperry Rand Corporation ("Sperry Rand") has taken no part in this motion to dismiss.

2. The complaint also contains two other charges that Redactron and Sperry Rand (1) have combined and conspired to unfairly compete with Tycom in violation of the Sherman Anti-Trust Act, 15 U.S.C. §§ 1–7 and the Clayton Act, 15 U.S.C. §§ 14 and 15 and (2) have engaged in unfair competition by utilizing illegally obtained confidential and proprietary data from Tycom, making copies of Tycom's product and unfairly represented

to the trade that such products were developed by Redactron's independent research. While Redactron's motion of dismissal is directed to the entire action, it is clear from its argument that its motion is limited to the dismissal of the patent infringement claims on the ground that the patent owner is an indispensable party to that charge. As a result, the antitrust charge and the unfair competition claim are not affected by the motion to dismiss in so far as they are independent of the patent infringement claim.

3. Docket Item 12, Exs.

Jurisdiction of the patent infringement claim is conferred on this Court by 28 U.S.C. § 1338(a), and venue is proper under 28 U.S.C. § 1400(b).

Traditionally, courts have held that a general transfer of a whole patent, including the exclusive right to make, use and vend an invention throughout the United States, was an assignment which vested in the transferee the right to sue infringers in his own name. Waterman v. MacKenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891). On the other hand, a transferee of a patent, who was granted his interest in the patent under an agreement which is not in legal effect an assignment because certain rights were reserved to the patent owner, generally could not bring suit for infringement in his own name. *Waterman, supra;* Nordhaus, Patent, Trademark and Copyright Infringement, (1971), pp. 192–196; Deller's Walker on Patents, 2nd edition, pp. 99–103. Thus, historically, the question of whether or not a transferee could sue in his own name without joinder of the transferor depended on whether the transferee received substantially all the patent rights and thus effectively became the owner of the patent, or whether the transferor retained enough patent rights so as to maintain effective legal ownership of the patent. In the former case the transfer was considered an assignment and the transferee could sue in his own right, in the latter case the transfer was considered a license and the transferee could not sue in his own right.

After the adoption of the Federal Rules of Civil Procedure in 1938, courts began to apply Rule 19 in determining the question of when a patent owner, who had transferred an interest in his patent, was an indispensable party to an action on the patent brought by or against his transferee. In United States v. Washington Institute of Technology, 138 F.2d 25 (C.A. 3, 1943) the Third Circuit Court of Appeals found that old Rule 19(a) which required that "those having a joint interest shall be made parties . . . ." meant that those who were "indispensable parties" prior to the adoption of the rules were required to be joined. Id. at 25–26. While this language may be interpreted as merely adopting the *per se* assignee-versus-licensee rule attributed to *Waterman,* the court did not rely on *Waterman,* but instead relied upon Shields v. Barrows, 58 U.S. 130, 17 How. 130, 15 L.Ed. 158 (1854) which defined indispensable parties as:

"Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." at 139.

Reliance on *Shields* was reaffirmed in Shell Development Co. v. Universal Oil Products Co., 157 F.2d 421, 424 (C.A. 3, 1946) where the court quoted with approval the above cited language. In neither *Washington Institute* nor *Shell* was *Waterman* even mentioned, but those cases are unclear whether the Court was interpreting old Rule 19 as abandoning the traditional *Waterman* test for determining indispensability solely by reference to a characterization of the transferred property interest.[4]

Later Third Circuit patent cases, however, seemed to return to the *per se Waterman* test. For example, in Hook v. Hook & Ackerman, 187 F.2d 52 (C.A. 3, 1951), after reducing the issue before the court to a determination of whether or not a patent owner was an indispensable party to a suit on the patent

---

4. In Provident Tradesmens B. & T. Co. v. Lumbermens Mut. Cas. Co., 365 F.2d 802 (C.A.3, 1966), vacated, 390 U.S. 102, 88 S. Ct. 733, 19 L.Ed.2d 936 (1968), the Court of Appeals read *Shields* to say that a person whose interest "may be affected" by the decree of a court is an indispensable party, and that all indispensable parties have a substantial right to have suits dismissed in their absence. The Supreme Court disagreed with this reading of *Shields.* 390 U.S. at 125, 88 S.Ct. 733.

brought against the transferee, the court immediately launched into an analysis of the transfer agreement to determine whether it was a license or an assignment. After considerable reference to *Waterman,* the court concluded that the transfer in that case was an assignment. The court did consider the possibility of multiple litigation and prejudice to the absent patent owner but concluded with a finding that, since the transfer was an assignment, the patent owner was not an indispensable party. The only reference to Rule 19 came in a long footnote which was prefaced by a statement in the text that " . . . some principles and authorities governing the subject of parties which may be helpful in the study of the main question under discussion in our text . . . " appears in the footnote. The note quotes the rule and then cites a number of cases decided under the rule. *Washington Institute* is cited in the note as standing for the proposition that "patentees who have parted with all ownership by assignment are not indispensable parties."

Even if *Hook* were not conclusively a step back to the *per se* test of *Waterman,* the case of Hartford National B. & T. Co. v. Henry L. Crowley & Co., 219 F.2d 568 (C.A. 3, 1955) certainly was. In *Hartford* the court was faced with the issue of whether a New Jersey district court decision, holding that a patent owner was not an indispensable party to a suit on the patent brought against the owner's transferee, was correct. The court made no mention whatsoever of Rule 19 and proceeded to decide the issue in the affirmative solely on the basis that the transfer was an assignment, citing *Waterman* as sole authority.

Thus, until the adoption of amended Rule 19 in 1966 the criteria for judging when a patentee was an indispensable

party to a suit on a patent brought by or against a transferee of interests in the patent was at best confused. In order to understand the effect of amended Rule 19 on the determination of indispensable parties in patent suits, the Court first looks to the Advisory Committee's Note to the 1966 revision, 39 F.R.D. 89–94. That note points out a textual defect in the phrasing of old Rule 19 because it seemed at least superficially plausible to equate the word "indispensable" with the expression "having a joint interest" and thus caused some courts to conclude erroneously that one having a "joint interest" *must* be joined. *Washington Institute, supra,* is cited by the Note as an example of a court reaching that conclusion.[5] The Note goes on to explain that persons holding an interest technically "joint" are not always so related to the action that it would be unwise to proceed without them, whereas persons holding an interest not technically "joint" may prove to have such a relationship to the action that it should not go on in their absence. 39 F.R.D. at 90.

Amended Rule 19 requires courts to face squarely the pragmatic substantive and procedural considerations which properly should be controlling in determining whether a party is needed for the just adjudication of a case. 2 Federal Practice and Procedure, Barron and Holtzoff, § 512, note 21.9b. The Supreme Court noted in Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968),[6] Rule 19 teaches that whether or not a party is indispensable is the conclusion, not the starting point, of legal analysis:

"The decision whether to dismiss (i. e., the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases, some such factors being

5. "[The patent owner] has such a 'joint interest' with the appellee that he must be joined under [old] Rule 19(a)." 138 F.2d at 26.

6. In *Provident,* 365 F.2d 802, the Third Circuit Court of Appeals had expressly relied on both *Washington Institute* and *Hook.*

substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests. Rule 19 does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist. To say that a court 'must' dismiss in the absence of an indispensable party and that it 'cannot proceed' without him puts the matter the wrong way around: a court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether it can proceed without him." 390 U.S. at 118–119, 88 S.Ct. at 743.

■ That this pragmatic approach to the question of indispensability of parties is to apply to patent cases was made emphatically clear by the Advisory Committee's citation of two patent cases in order to illustrate the proper application of the first factor in Subdivision (b) of amended Rule 19. A. L. Smith Iron Co. v. Dickson, 141 F.2d 3 (C.A. 2, 1944) and Caldwell Manufacturing Co. v. Unique Balance Co., 18 F.R.D. 258 (S. D.N.Y.1955). And the pragmatic approach has in fact been applied in patent cases since adoption of the amended rule. Catanzaro v. I. T. & T., 378 F. Supp. 203 (D.Del.1974); H. K. Porter Co., Inc. v. Gates Rubber Co., 177 USPQ 302, 306 (D.Colo.1972); Owatonna Manufacturing Company v. Mehoe Company, 301 F.Supp. 1296 (D.Minn.1969). Accordingly, this Court concludes that it must examine the factors suggested by Rule 19 before deciding whether to proceed in the absence of patent owner Holmes.

The applicable parts of Rule 19 read as follows:

"Rule 19. Joinder of Persons Needed for Just Adjudication

"(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

"(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

At the outset, the Court finds that Holmes falls within the category of persons who, under 19(a), should be "joined if feasible." As legal title holder of the patent in suit entitled to royalties and

half of all damages recovered in any infringement suit thereunder in accordance with the Agreement with Tycom, Holmes possesses an interest relating to the subject matter of this action. Hence, the possibility at least exists that a judgment might impede Holmes' ability to protect his interest, or require later relitigation by him if possible, just as the absent party in *Provident* faced at least the possibility that a judgment might impede his ability to protect his interest, or lead to later relitigation by him. *Provident*, 390 U.S. at 108, 88 S.Ct. 733.[7] However, no showing has been made to this Court that Holmes is subject to service of process of this Court.[8] Without this showing, the problem is one to which Subdivision (b) of Rule 19 addresses itself.

Rule 19(b) suggests four "factors" to be considered in each case to determine whether, in equity and good conscience, the Court should proceed without a party who would have been joined under Rule 19(a) if feasible.

The first factor for consideration under Rule 19(b) is to what extent a judgment rendered in Holmes' absence might be prejudicial to Redactron or to Holmes himself. Redactron argues that should this Court determine that the patent in suit is either invalid or not infringed, Holmes, not being bound by the principles announced in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) may relitigate those issues at a later date, and that such relitigation would be prejudicial to Redactron. Redactron relies upon Caldwell Manufacturing Co. v. Unique Balance Co., 18 F.R.D. 258 (S.D.N.Y.1955) as authority for its argument that the absent patentee might very well prevent a defense of collateral estoppel in any later relitigation of the issue.[9]

It is true, as Redactron argues, that *Blonder-Tongue* does not expressly prevent relitigation by Holmes and this is made clear by the following language:

> "Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarely against their position.

*Blonder-Tongue, supra*, 402 U.S. at 329, 91 S.Ct. at 1443.

However, this Court does not view Blonder-Tongue, a suit brought by the assignee of a patent in which the Supreme Court struck down the mutuality of estoppel requirement of Triplett v. Lowell, 297 U.S. 638, 56 S.Ct. 745, 80 L.Ed. 949

---

7. Also see, A. L. Smith Iron Co. v. Dickson, 141 F.2d 3 (C.A.2, 1944) wherein Judge L. Hand said that "every patent owner has an interest in keeping the reputation of his patent from the stain of a judgment of invalidity—an interest which it is proper for a court to recognize." 141 F.2d at 6.

8. Holmes was apparently a resident of Los Angeles, California on October 27, 1968 (Docket Item 12, preface to the Agreement) and he listed a Las Vegas, Nevada address in United States Patent No. 3,452,851, issued July 1, 1969 (Docket Item 1). A notice of deposition filed July 11, 1974 suggests that Holmes is now from Pompton Lakes, New Jersey. (Docket Item 14).

9. Redactron's argument that it may be prejudiced because Holmes could relitigate the issues depends on the assumption that Holmes has the independent capacity to bring a suit for infringement of the Holmes patent even if the present suit had not been brought. Of course capacity depends on the interests Holmes has retained in the patent. These interests include: retention of legal title, the right to be joined in all actions for infringement of the patent, the right to receive royalties under the patent, the right to prevent Tycom's interests from being assigned or transferred without prior written consent of Holmes, the right to one-half of all damages recovered in infringement actions brought under the Holmes patent. (Docket Item 12, Exs. B & E). While this Court need not make a definitive finding that Holmes would have capacity to sue on the Holmes patent, the above retained rights suggest a realistic basis for such capacity. See, Grantham v. McGraw-Edison Company, 444 F.2d 210 (C.A.7, 1971).

(1938), as in any way limiting the traditional principles of collateral estoppel applied against those who never appeared in a prior action but were in privity with those who did appear.[10] The question therefore is whether Holmes may be considered in privity with Tycom and thereby would be estopped from relitigating the patent issues of this action under the traditional principles of res judicata and the related doctrine of collateral estoppel.

It is difficult to formulate a definitive statement of the doctrine of privity, but in most situations where privity has been held to exist, one or more of the following three relationships between the privies are present: concurrent relationship to the same right of property; successive relationship to the same right of property; or representation of the interests of the same person. 1B Moore's Federal Practice ¶ 0.411[1]. There is at the least a strong probability that the Holmes-Tycom relationship falls into the first category since both Holmes and Tycom claim a concurrent interest in the Holmes patent. Furthermore, as Moore's points out, ¶ 0.411[12] at Page 1666, generally, when privity is based on concurrent relationship to the same right, one of the privies, rather than the other, has capacity to litigate on behalf of the ward's interest and here, Holmes has expressly given Tycom the exclusive right to litigate all actions for infringement of the Holmes patent:

"All actions for infringement of patents for Holmes Typewriter Communication Patents or Holmes Stenographic Machine Patents shall be instituted by TEC [Tycom] at the sole discretion and expense of TEC [Tycom], and Holmes shall join in such actions and lend any and all assistance desired by TEC [Tycom] at the expense of TEC [Tycom]. In the event damages are collected by TEC [Tycom] in any such action for infringement, fifty percent (50%) of the amount of such damages remaining after first deducting the expenses of such action, including attorney's fees and other expenses, shall be paid by TEC [Tycom] to Holmes." Docket Item 12, par. 18 [Brackets added].[11]

■ Also, *Caldwell*, contrary to the reliance placed upon it by Redactron, confirms the above conclusion that when a licensor-patentee is deemed to have surrendered the right to sue to his licensee, res judicata attends the success or failure of suit so brought by the licensee. *Caldwell, supra*, 18 F.R.D. at 264.

■ This Court therefore concludes that on the present record there is a strong probability that Redactron could successfully assert the doctrines of collateral estoppel or res judicata as a defense to any subsequent attempt by Holmes to relitigate the issues of the present infringement suit. Despite this strong probability, however, the Court is not prepared to foreclose from consideration, when balancing the Rule 19(b) factors, the possibility that Redactron may still be prejudiced by Holmes' absence from the present suit. Without any participation by Holmes in the present action, and hence without any opportunity by Holmes to control the present litigation, it is not inconceivable that a court at some future time and perhaps with factors made available to

10. In Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 297–299, 37 S.Ct. 506, 61 L. Ed. 1148 (1917) the Supreme Court made clear that the doctrine of res judicata is fully applicable to cases of patent infringement to bind those in privity with the named parties.

11. This independent right to sue for patent infringement by Tycom was amended by Agreement of April 18, 1974 by the following provision:

"THIRTEENTH: In the event that TYCOM shall not commence a patent infringement suit against Redactron Corporation within six months from the date hereof, then HOLMES shall have the right to institute such suit on the same terms and conditions as the rights granted to TEC [TYCOM] under Paragraph 18 of the Basic Agreement." (Docket Item 12, Ex. E, par. 13).

it which are not contained on the present record, may find that Holmes was not in privity with Tycom in the present suit.[12] Such a finding, while perhaps remote, could prove to be greatly prejudicial to Redactron.

Turning to a consideration of the possible prejudice to Holmes, the Court finds in addition to the financial interest of Holmes mentioned above, that Tycom is under a contractual obligation to Holmes to commence a patent infringement suit promptly against Redactron or else Holmes can institute such a suit "on the same terms and conditions as the rights granted to TEC [Tycom] under Paragraph 18 of the Basic Agreement."[13] Paragraph 18 provides that all actions for infringement of Holmes' patent are at the sole expense of Tycom and that Holmes *shall* join in such actions.[14] Thus Holmes appears to have a contractual right to have Tycom sue to protect his interest in the patent and to be joined as a party plaintiff to such a patent infringement suit. Allowing the present infringement suit to continue without Holmes as a party would clearly be prejudicial to Holmes' contractual rights. Further, Holmes may realistically be deterred from being able at a later date to assert his rights in the patent by reason of the *stare decisis* effect of a finding of this Court that his patent is invalid should it be determined he is not estopped by the principles of res judicata or the related doctrine of collateral estoppel.[15]

The second factor to be considered under Rule 19(b) is to what extent the prejudices caused by Holmes' absence can be lessened or avoided. In this regard neither party has come forward with a suggestion. While perhaps an affidavit by Holmes which clearly waives his contractual right to join and acknowledges the effect of *stare decisis*,

should the patent be found invalid, might tend to eliminate Holmes' prejudice from not being joined as a factor, yet it would do little to obviate Redactron's fears of being faced with multiple litigation from Holmes. See *Catanzaro, supra* at 207.

The third factor to be considered is whether a judgment rendered in Holmes' absence will be adequate. The Supreme Court reads this factor as pertaining to the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. *Provident, supra,* 390 U.S. at 102, 88 S.Ct. 733. As pointed out in *Blonder-Tongue,* because patent suits most often consume a great amount of court time due to their complexity and because there is a great public interest in determining the status of a patent once and for all, patent controversies, if possible, should be settled in a single action. In the present suit whatever possibility of future litigation may exist could be eliminated by the presence of Holmes thereby furthering the effort by the Supreme Court to alleviate burdens upon the courts and the public caused by relitigation of patents once held invalid.

The fourth factor is whether Tycom will have an adequate remedy if the patent infringement claims are dismissed for non-joinder of Holmes. Tycom apparently can force Holmes to become a party-plaintiff in all actions which Tycom brings for infringement of the Holmes patent.[16] Tycom has advanced no reason why Holmes' contractual obligation to join such an action could not be invoked. As a result, the Court finds that, even if the present infringement claims are dismissed for the non-joinder of Holmes, Tycom will have an adequate remedy for such an action in this forum through the enforcement of Tycom's Agreement with Holmes.

---

12. For example, in *Hook, supra,* 187 F.2d 52 at 59, the Third Circuit found that any decision by the Court in the suit which had been brought by an exclusive licensee would not, without the presence of a co-patent owner-licensor, be res judicata as to him.

13. See note 11, supra.

14. See text note 11, supra.

15. Also, see note 7, supra.

16. See text note 11, supra.

In the light of the above analysis of Rule 19(b) the Court determines in equity and good conscience that Tycom should not be allowed to proceed with the patent infringement claims of this suit without joining Holmes. By joining Holmes as a party-plaintiff, Tycom will alleviate the possible prejudice to Holmes, Redactron and the public and will fulfill its contractual obligations to Holmes under the Agreement. Thus, the Court concludes that under Rule 19 Holmes is an indispensable party to the patent infringement claims asserted in the present complaint and these claims will be dismissed, but leave will be granted to Tycom to amend the complaint to add Holmes as a party within a reasonable time from this date.

An order will be entered in accordance with this opinion.