847 F.2d 841
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
John C. MABBETT, Plaintiff-Appellant,
v.
TANDY CORPORATION, d/b/a/ Radio Shack, Inc.; W.H. Brady
Company; California Switch Signal Inc.; Sound Design;
Casio, Inc.; Texas Instruments Corporation and American
Telephone & Telegraph Company, Defendants-Appellees.
 No. 88-1007.
 United States Court of Appeals, Federal Circuit.
 April 7, 1988.
 
 Before MARKEY, Chief Judge, RICH, Circuit Judge, and BENNETT, Senior Circuit Judge.
 PER CURIAM.
 
 DECISION
 
 1
 John C. Mabbett filed a patent infringement suit in the United States District Court for the Central District of California against Tandy Corporation and other defendants (collectively "Tandy"), alleging that the defendants were infringing United States Patent No. 3,437,973 (the '973 patent) relating to an electrical touch switch. Before this court is Mabbett's appeal of the district court's March 30, 1987 grant of summary judgment (unpublished) in favor of Tandy on the ground that Mabbett did not hold legal title to the '973 patent prior to the expiration of the patent and therefore did not have standing to maintain the action for infringement. We affirm the dismissal of the complaint but remand with instructions to dismiss the complaint without prejudice.
 
 OPINION
 
 2
 Summary judgment is properly granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. All significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. United States v. Diebold, Inc., 369 U.S. 654, 654-55 (1962); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed.Cir.1987); SRI International v. Matsushita Electric Corp., 775 F.2d 1107, 1116-17, 227 USPQ 577, 581-82 (Fed.Cir.1985).
 
 
 3
 There is no dispute that in 1966, prior to the filing of the application that became the '973 patent, Mabbett executed a valid assignment of all "right, title, and interest" in the invention to Crosby Research, Inc. (Crosby), reserving only the right to a percentage of any royalties that Crosby received for marketing the invention. The formal assignment was recorded in the PTO on March 15, 1967, the date that the application was filed. Mabbett is listed as the inventor on the '973 patent, which was granted to Crosby as assignee on April 8, 1969. That a reservation of royalties was made or that no royalties were ever paid does not alter the legal effect of the assignment. Furthermore, Mabbett did not reserve any reversionary interest in the invention or resulting patent.[1] Thus, following the assignment from Mabbett, Crosby held legal title to the '973 patent.
 
 
 4
 Pursuant to the stipulated judgment in the 1975 action brought by the California Attorney General, Crosby was enjoined from certain business practices and ordered to return to all persons with whom it had contracted to provide services relating to the development, sale, licensing, or manufacturing of ideas or inventions "all drawings, prototypes, documents, and records in its possession which were originally submitted to Crosby by said persons." Unfortunately, the judgment did not address the status of any patents assigned to Crosby by others.
 
 
 5
 After that judgment, Crosby apparently ceased operations and was thereafter suspended as a valid corporation under California law. Nothing in the record, however, indicates that Crosby was ever officially wound up or dissolved nor is there any indication that any existing assets of Crosby were ever distributed to creditors, shareholders, or any other person. Under California law:
 
 
 6
 Any assets inadvertently or otherwise omitted from the winding up continue in the dissolved corporation for the benefit of the persons entitled thereto upon dissolution of the corporation and on realization shall be distributed accordingly.
 
 
 7
 Cal.Corp.Code Sec. 2010(c) (West 1977). Thus, since the '973 patent was an asset of Crosby which was not conveyed back to Mabbett, distributed to a creditor of Crosby, or distributed to a shareholder, under California law, Crosby still held legal title to the patent after 1975, albeit apparently for the benefit of the person entitled thereto.
 
 
 8
 Mabbett made no attempt to seek title to the patent or assert any claim to his invention until 8 years after the state's judgment against Crosby, when he filed his quiet title action against Crosby in the California Superior Court in 1983. Mabbett's unopposed summary judgment motion was granted. As this court has recently reaffirmed, the ownership of a patent is a matter to be decided under state law. See Vink v. Schijf, --- F.2d ----, 5 USPQ2d 1728, 1731 (Fed.Cir.1988); see also Luckett v. Delpark, Inc., 270 U.S. 496 (1926) (a suit seeking a declaratory judgment of ownership of a patent does not fall within the patent laws). Thus, Tandy's argument that federal law, specifically 35 U.S.C. Sec. 261 (1982), governs the assignment of patents and entirely preempts state law in this area is misplaced.[2] Nevertheless, Tandy's general assertion that a valid judgment in a quiet title action is ineffective to transfer legal title in a patent is well grounded. A quiet title action decided under the applicable state law only determines which of the parties to the action has superior title to the property in question where such title is disputed but cannot be used as a means to transfer legal title between the parties. In order to gain legal title to the patent, Mabbett should have sought to rescind his assignment to Crosby, not quiet title in the patent.
 
 
 9
 We need not and do not decide most of the issues advanced and argued by the parties since we must decide the case presented, not the hypothetical case that should have occurred or that may occur in the future. Regardless of the effective date of the quiet title judgment, the binding effect of the quiet title judgment on the defendants here, or even the validity of the quiet title judgment itself, it is inescapable that the quiet title action could not operate to transfer legal title from Crosby to Mabbett. We decline Mabbett's invitation to construe the state court's judgment in the quiet title action as nevertheless adjudicating that Mabbett acquired superior title to the '973 patent as of a certain date.
 
 
 10
 Ownership of the patent is a prerequisite to the right to sue for infringement. See, e.g., Agrashell, Inc. v. Hammons Products Co., 352 F.2d 443, 446, 147 USPQ 347, 348-49 (8th Cir.1965); R.W. Sims v. Mack Trucks, Inc., 407 F.Supp. 742, 744, 191 USPQ 218, 219-20 (E.D.Pa.1976). We agree with the district court that whatever equitable rights Mabbett held or acquired as the result of either state court judgment against Crosby would not alter the conclusion that legal title to the '973 patent remained in Crosby at all times subsequent to the 1966 assignment from Mabbett. As the holder of legal title to the patent is an indispensable party to an infringement suit, the dismissal of the present complaint was correct.
 
 
 11
 The district court dismissed Mabbett's infringement complaint with prejudice because the patent had expired prior to Mabbett's establishing legal title thereto. However, the right to sue for infringement of a patent does not end with the expiration of the patent. The legal owner of a patent may still file suit after the patent's expiration to recover damages for alleged infringements occurring before the expiration of the patent, subject to the provisions of 35 U.S.C. Sec. 286 and any equitable defenses such as laches. Therefore, that this infringement suit was brought by the incorrect party or without joinder of an indispensable party does not provide the defendants with a complete defense to infringement. An accused infringer's sole interest in determining ownership of the patent is to avoid the possibility of paying damages to different parties for the same infringement. Since Mabbett could conceivably pursue and obtain a valid and proper judgment under state law which would serve to vest legal title in the '973 patent in him as of a date prior to the patent's expiration,[3] we think it proper that the present case be remanded to the district court with instructions to dismiss the complaint without prejudice.
 
 
 
 [1]
 Cf. Owens Generator Co. v. H.J. Heinz Co., 214 F.Supp. 864, 866, 136 USPQ 406, 408 (N.D.Cal.1961) (assignment to corporation "for so long as [the assignee corporation] shall continue in business" terminated by operation of law when the corporation's charter was revoked by the state attorney general), aff'd, 314 F.2d 66, 136 USPQ 404 (9th Cir.), cert. denied, 375 U.S. 815 (1963)
 
 
 [2]
 Section 261 does not prescribe the method by which patents must be assigned or mandate that assignments of patents must be recorded to be valid. Legal title to a patent may pass despite a failure to record, Hook v. Hook & Ackerman, Inc., 187 F.2d 52, 58, 88 USPQ 267, 271-72 (3d Cir.1951), and lack of recordation in the Patent Office has no bearing on the result of the suit where there are no intermediate interests affected. See also John Tuman & Sons, Inc. v. Basse, 113 F.2d 928, 928-29, 46 USPQ 302, 303 (2d Cir.1940)
 
 
 [3]
 Of course, we express no opinion as to the advisability or likelihood of success of any such efforts